## No. 10-15229

---

### UNITED STATES COURT OF APPEALS
### FOR THE NINTH CIRCUIT

POTRERO HILLS LANDFILL, INC., BLT ENTERPRISES OF SACRAMENTO, INC.,
BRENTWOOD DISPOSAL SERVICE, INC., CONCORD DISPOSAL SERVICE, INC.,
CONTRA COSTA WASTE SERVICE, INC., DISCOVERY BAY DISPOSAL, INC., OAKLEY
DISPOSAL SERVICE, INC., PITTSBURG DISPOSAL AND DEBRIS BOX SERVICE, INC.,
RIO VISTA SANITATION SERVICE, INC., TRASHPROS, LLC, WASTE CONNECTIONS,
INC., WASTE CONNECTIONS OF CALIFORNIA, INC., and WEST COAST RECYCLING
AND TRANSFER, INC.,

*Plaintiffs-Appellants,*

v.

COUNTY OF SOLANO,

*Defendant-Appellee,*

and

SUSTAINABILITY, PARKS, RECYCLING AND WILDLIFE LEGAL DEFENSE FUND,
SIERRA CLUB, and NORTHERN CALIFORNIA RECYCLING ASSOCIATION,

*Defendants-Intervenors-Appellees.*

---

Appeal From The United States District Court
For The Eastern District of California

---

### BRIEF OF APPELLANTS

Gary J. Smith (CA Bar 141393)
Lily N. Chinn (CA Bar 203173)
BEVERIDGE & DIAMOND, P.C.
456 Montgomery Street, Suite 1800
San Francisco, CA 94104-1251
Telephone: (415) 262-4045
Facsimile: (415) 262-4040
Email: gsmith@bdlaw.com
         lchinn@bdlaw.com

James B. Slaughter (DC Bar 417273)
Graham St. Michel (CA Bar 261882)
BEVERIDGE & DIAMOND, P.C.
1350 I Street, NW, Suite 700
Washington, DC 20005-3311
Telephone: (202) 789-6040
Facsimile: (202) 789-6190
Email: jslaughter@bdlaw.com
         gstmichel@bdlaw.com

Dated: September 20, 2010

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Appellants submit this statement disclosing all parent companies and publicly held corporations owning 10% or more of their stock.

Plaintiff Waste Connections, Inc., a publicly traded company (NYSE:WCN), has no parent company. No publicly traded company owns more than 10% of the stock of Waste Connections, Inc.

Plaintiffs Potrero Hills Landfill, Inc., Waste Connections of California, Inc., and West Coast Recycling and Transfer, Inc. are wholly-owned subsidiaries of Waste Connections, Inc.

Plaintiff BLT Enterprises of Sacramento, Inc., a privately held company, has no parent company. No publicly traded company owns more than 10% of the stock of BLT Enterprises of Sacramento.

Plaintiffs Brentwood Disposal Service, Inc., Concord Disposal Service, Inc., Contra Costa Waste Service, Inc., Discovery Bay Disposal, Inc., Oakley Disposal Service, Inc., Pittsburg Disposal and Debris Box Service, Inc., and Rio Vista Sanitation Service, Inc. are wholly-owned subsidiaries of Garaventa Enterprises, Inc., a privately held company. No publicly traded company owns more than 10% of the stock of those companies.

Plaintiff TrashPros, LLC, a privately held company, has no parent company. No publicly traded company owns more than 10% of the stock of TrashPros, LLC.

Dated: September 20, 2010       ___/s/  Lily N. Chinn___
                                  Lily N. Chinn
                                  Counsel for Appellants

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

JURISDICTIONAL STATEMENT ..................................................................1

ISSUE PRESENTED .....................................................................................1

STATEMENT OF THE CASE .......................................................................1

STATEMENT OF FACTS .............................................................................4

I.      SOLID WASTE MANAGEMENT AND DISPOSAL AFFECTED BY MEASURE E ........................................................4

II.    THE POTRERO HILLS LANDFILL ................................................5

III.   SOLANO COUNTY MEASURE E ...................................................7

IV.   THE PHLF EXPANSION PROJECT AND RELATED LITIGATION .................................................................................8

V.    STATE MANDAMUS PETITIONS TO COMPEL MEASURE E ENFORCEMENT ....................................................................9

VI.   APPELLANTS' FEDERAL COMPLAINT AND THE DISTRICT COURT'S DISMISSAL ..........................................11

STANDARD OF REVIEW ..........................................................................11

SUMMARY OF THE ARGUMENT ............................................................12

I.      THE DISTRICT COURT ERRED BY ABDICATING ITS MANDATORY JURISDICTION UNDER THE YOUNGER ABSTENTION DOCTRINE ........................................................13

     A.     Abstention is Rare and Limited to Specific and Unusual Circumstances Not Present Here ..........................14

     B.     Writ Petitions Filed By Private Parties Are Not State Proceedings To Which Younger Applies ............................15

     C.     There Are No Important State Interests Within The Meaning Of Younger ..........................................................19

i

1. Neither The State Nor The County Has Any Sovereign Interest In Enforcing Measure E ............................ 19

2. The Woodfeathers Case Is Readily Distinguishable And Does Not Justify The District Court's Abstention ...................................................... 23

3. The County Defendant And The State Argued For Federal Adjudication Of Measure E's Constitutionality, Erasing Any Comity Concerns .................................................... 24

D. Federal Review Of Measure E Would Not Enjoin State-Initiated Proceedings For Purposes Of Younger ................................ 26

E. Abstention Denied Non-Parties Their Day In Court ........................ 28

CONCLUSION ................................................................................................ 31

ii

# TABLE OF AUTHORITIES

**Federal Cases**

Page

*Altmann v. Republic of Austria*,
  317 F.3d 954 (9th Cir. 2002) ...................................................................4

*Am. Int'l Underwriters, Inc. v. Cont'l Ins. Co.*,
  843 F.2d 1253 (9th Cir. 1988) ................................................................19

*AmerisourceBergen Corp. v. Roden*,
  495 F.3d 1143 (9th Cir. 2007) ........................................................ passim

*Ankenbrandt v. Richards*,
  504 U.S. 689 (1992) ................................................................................14

*Baffert v. Cal. Horse Racing Bd.*,
  332 F.3d 613 (9th Cir. 2003) ..................................................................20

*Benavidez v. Eu*,
  34 F.3d 825 (9th Cir. 1994) ....................................................................28

*Brown v. Hotel & Rest. Employees & Bartenders Int'l Union Local 54*,
  468 U.S. 491 (1984) ................................................................................24

*Cate v. Oldham*,
  707 F.2d 1176 (11th Cir. 1983) ..............................................................22

*Chemical Waste Mgmt. v. Hunt*,
  504 U.S. 334 (1992) ..................................................................................7

*Chicot County v. Sherwood*,
  148 U.S. 529 (1893) ................................................................................13

*Cohens v. Virginia*,
  19 U.S. 264 (1821) ..................................................................................13

*Colorado River Water Conservation Dist. v. United States*,
  424 U.S. 800 (1976) ................................................................... 14, 27, 28

iii

*Columbia Basin Apt. Ass'n v. City of Pasco*,
  268 F.3d 791 (9th Cir. 2001) ........................................................... 25

*Doran v. Salem Inn*,
  422 U.S. 922 (1975) ............................................................. 29, 30

*Dubinka v. Judges of the Superior Court*,
  23 F.3d 218 (9th Cir. 1994) ........................................................ 16

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*,
  544 U.S. 280 (2005) ................................................................. 14

*Fort Gratiot Sanitary Landfill v. Michigan Dep't of Natural Res.*,
  504 U.S. 353 (1992) ................................................................... 7

*Gilbertson v. Albright*,
  381 F.3d 965 (9th Cir. 2004) ................................................. passim

*Goldie's Bookstore, Inc. v. Super. Ct. of Cal.*,
  739 F.2d 466 (9th Cir. 1984) ...................................................... 20

*Green v. City of Tucson*,
  255 F.3d 1086 (9th Cir. 2001) (en banc) .................................. passim

*Green v. Jefferson County Comm'n*,
  563 F.3d 1243 (11th Cir. 2009) ................................................... 28

*Huffman v. Pursue, Ltd.*,
  420 U.S. 592 (1975) ....................................................... 16, 20, 24

*Juidice v. Vail*,
  430 U.S. 327 (1977) ............................................................ 16, 21

*Kendall-Jackson Winery Ltd. v. Branson*,
  212 F.3d 995 (7th Cir. 2000) ...................................................... 25

*Kleenwell Biohazard Waste & Gen. Ecology Consultants, Inc. v. Nelson*,
  48 F.3d 391 (9th Cir. 1995) ........................................................ 24

iv

*Kline v. Burke Construction Co.*,
  260 U.S. 226 (1922) ...................................................................13

*M&A Gabee v. Cmty. Redevelopment Agency of the City of Los Angeles*,
  419 F.3d 1036 (9th Cir. 2005) .....................................................20

*Marks v. Stinson*,
  19 F.3d 873 (3d Cir. 1994) ...........................................................27

*Meredith v. Oregon*,
  321 F.3d 807 (9th Cir. 2003) ........................................................20

*Middlesex County Ethics Comm. v. Garden State Bar Ass'n*,
  457 U.S. 423 (1982) ............................................................ 16, 20

*Mitchum v. Foster*,
  407 U.S. 225 (1972) ...................................................................14

*Mitofsky v. Super. Ct.*,
  703 F.2d 332 (9th Cir. 1983) ........................................................20

*Mobil Oil Corp. v. Long Beach*,
  772 F.2d 534 (9th Cir. 1985) ........................................................19

*New Orleans Pub. Serv., Inc. v. Council of New Orleans*,
  491 U.S. 350 (1989) ........................................................... passim

*Ohio Bureau of Empl. Servs. v. Hodory*,
  431 U.S. 471 (1977) ...................................................................19

*Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc.*,
  477 U.S. 619 (1986) ...................................................................24

*Pennzoil Co. v. Texaco, Inc.*,
  481 U.S. 1 (1987) ....................................................... 16, 19, 21

*Philip Morris, Inc. v. Blumenthal*,
  123 F.3d 103 (2d Cir. 1997) .........................................................21

v

*Potrero Hills Landfill, Inc., v. County of Solano*,
No. 09-2514, 2009 WL 5206709 (E.D. Cal. Dec. 23, 2009) ...............................4

*Quackenbush v. Allstate Ins. Co.*,
517 U.S. 706 (1996) ...............................................................14

*Richards v. Jefferson County*,
517 U.S. 793 (1996) ...............................................................28

*San Jose Silicon Valley Chamber of Commerce Political
Action Comm. v. City of San Jose*,
546 F.3d 1087 (9th Cir. 2008) .....................................................20

*Trainor v. Hernandez*,
431 U.S. 434 (1977) ........................................................ 16, 19

*United States v. Morros*,
268 F.3d 695 (9th Cir. 2007) .......................................................25

*United States v. Republic Servs., Inc.*,
2010 WL 2780908 (D.D.C. July 15, 2010) .............................................6

*Wiener v. County of San Diego*,
23 F.3d 263 (9th Cir. 1994) ................................................ 11, 27

*Willcox v. Consolidated Gas Co.*,
212 U.S. 19 (1909) ...............................................................13

*Woodfeathers, Inc. v. Washington County*,
180 F.3d 1017 (9th Cir. 1999) ........................................ 20, 23-24, 27

*World Famous Drinking Emporium, Inc. v. City of Tempe*,
820 F.2d 1079 (9th Cir. 1987) ......................................................24

*Younger v. Harris*,
401 U.S. 37 (1971) .......................................................... passim

vi

**State Cases**

*N. Cal. Recycling v. County of Solano*,
Case No. FCS033687 (Solano County Super. Ct. filed June 10, 2009)................9

*Protect the Marsh v. County of Solano*,
Case No. FCS026839 (Solano County Super. Ct. filed Oct. 13, 2005) ...............9

*Sierra Club v. County of Solano*,
Case No. FCS034073 (Solano County Super. Ct. filed Aug. 10, 2009) ..............9

*Sustainability, Parks, Recycling and Wildlife Legal Defense Fund v.
County of Solano*, Case No. FCS033700
(Solano County Super. Ct. filed June 12, 2009).......................................9

**Federal Statutes**

28 U.S.C. § 201 ................................................................................1

28 U.S.C. § 1291 ..............................................................................1

28 U.S.C. § 1331 ..............................................................................1

28 U.S.C. § 1343 ..............................................................................1

42 U.S.C. § 1983 ..............................................................................2

**State Statutes**

Solano County Code, Ch. 23.................................................................8

Cal. Pub. Res. Code § 40000 et seq. ......................................................8

**Federal Regulations**

73 Fed. Reg. 76,383 (Dec. 16, 2008) .....................................................6

## JURISDICTIONAL STATEMENT

The district court had jurisdiction pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1343 (section 1983 jurisdiction), and 28 U.S.C. § 201 (declaratory judgment).

This Court has jurisdiction under 28 U.S.C. § 1291. A district court order dismissing the case under the *Younger* abstention doctrine ends the litigation and is a final appealable order within the meaning of section 1291.

The abstention order subject to this appeal was issued on December 23, 2009 and judgment was entered on the same day. Appellants timely filed the notice of appeal on January 22, 2010.

## ISSUE PRESENTED

Whether the district court erred by abstaining from Appellants' federal constitutional challenge to Measure E in favor of writ of mandate actions against Solano County in state court brought by advocacy groups seeking to enforce Measure E, where such actions did not include twenty-one Plaintiffs in the federal case, and where both Solano County and the State of California opposed abstention and sought federal adjudication of the constitutionality of Measure E.

## STATEMENT OF THE CASE

Appellants challenge the district court's order dismissing their Amended Complaint under the abstention doctrine of *Younger v. Harris*, 401 U.S. 37 (1971) ("*Younger*"), and seek reversal of the order and remand to the district court to obtain federal constitutional review of the Solano County ballot initiative enacted in 1984 known as Measure E. By severely restricting the quantity of out-of-county solid waste that may enter Solano County, Measure E expressly discriminates

against waste by place of origin.  Solano County has not enforced Measure E since 1992 when the County attorney and State legislative counsel issued legal opinions finding Measure E unconstitutional.  It was resurrected by the Intervenors-Appellees in 2008 as part of their litigation strategy to block the expansion of the Potrero Hills Landfill.

Twenty-three Plaintiffs involved in the solid waste and recycling business in Northern California, Nevada and Oregon brought this action in federal court under 42 U.S.C. § 1983 and the Commerce Clause, seeking to challenge Measure E.  The Amended Complaint, filed in the United States District Court for the Eastern District of California on September 25, 2009, names Solano County as Defendant and alleges a one count claim for relief.  Defendant Solano County answered the Amended Complaint on October 16, 2009, admitting in large part the allegations of Measure E's unconstitutionality, AR 34  ("Defendant admits that Measure E discriminates against out-of-county and out-of-state waste based solely on area of origin . . . [which] represents a per se violation of the Commerce Clause"), and that "enforcement of Measure E would exacerbate the waste management challenges faced by both local governments and private waste-industry companies."  AR 30.

Intervenors-Appellees are three advocacy groups attempting to use Measure E to stop the expansion of the Potrero Hills Landfill – a project Solano County approved pursuant to applicable laws including the California Environmental Quality Act ("CEQA").[1]  The Intervenors-Appellees moved to

---

[1]    Intervenor-Appellee Northern California Recycling Association ("NCRA") is a "trade organization for recyclers" based in Alameda County with a stated commercial interest in stopping the landfill expansion because the availability of a landfill disposal option leads to "reduced supply and higher cost of recyclable materials."  Decl. of John Moore 2 (Dist. Ct. Dkt. 22).  Intervenor-Appellee Sierra Club is a local chapter of a national organization interested in Measure E as a basis for opposing the expansion of Potrero Hills Landfill, believing that "if Measure E

(Continued …)

2

1  dismiss the Amended Complaint on various theories including an argument that the
2  district court should abstain in favor of three writ of mandate petitions Intervenors-
3  Appellees filed against Solano County in state court.  Those petitions, which
4  involved only two of the twenty-three Plaintiffs to the federal case, sought an order
5  compelling the County to enforce Measure E in contravention of the County's
6  long-standing policy and legal analysis.

7      Appellants were joined by Defendant Solano County in opposing the
8  motions to dismiss, with the County arguing that the federal case was the most
9  appropriate means for "a prompt and definite judicial determination" of the "pure
10  and relatively straight-forward question" of whether Measure E is contitutional.
11  County Opp'n Br. 5 (Dist. Ct. Dkt. 42).  The state of California, participating as an
12  amicus curiae, also filed a brief "strongly urg[ing] the [district court] to deny" the
13  motions to dismiss.  State Opp'n Br. 2 (Dist. Ct. Dkt. 40).  The California Attorney
14  General, while in "agree[ment] with [the] conclusion [that Measure E violates the
15  Commerce Clause]," emphasized the concern that "enforcement of Measure E
16  would deprive the State of California of the benefits of [a federal antitrust] consent
17  judgment . . . and weaken California's antitrust enforcement by gutting the
18
19  _____

(Continued …)

20  was enforced, there would be no need for the landfill expansion."  Decl. of Jim
    Dekloe 2 (Dist. Ct. Dkt. 21).  Finally, Intervenor-Appellee Sustainability, Parks,
21  Recycling, and Wildlife Legal Defense Fund ("SPRAWLDEF") is an organization
22  based in Contra Costa County with the primary purpose of "engag[ing] in landfill
    siting controversies in solidarity with local landfill opponents" and whose
23  "directors are harmed by the loss of revenue for recycling programs in 17 Alameda
24  County communities as a consequence of waste exported from Alameda County to
    Solano County's Potrero Hills Landfill because of the cheap rates there."
25  SPRAWLDEF Mem. P.&A. in Supp. of Mot. to Intervene 2 (Dist. Ct. Dkt. 10);
26  Decl. of David Tam 3 (Dist. Ct. Dkt. 11).
27
28

protections for consumers who often bear the brunt of anticompetitive conduct." *Id.* at 2 n.1, 3.

In an unpublished opinion issued on December 23, 2009, the district court abstained from jurisdiction after concluding pursuant to the *Younger* abstention doctrine that federal review could moot the state writ proceeding, and dismissed the Amended Complaint without reaching other theories of dismissal. *Potrero Hills Landfill, Inc., v. County of Solano*, No. 09-2514, 2009 WL 5206709 (E.D. Cal. Dec. 23, 2009) (included in the excerpts of record as Excerpt C).

## **STATEMENT OF FACTS**

### I.     **SOLID WASTE MANAGEMENT AND DISPOSAL AFFECTED BY MEASURE E**

Measure E frustrates the timely and economical solid waste management that is vital to the nation's public health, safety and welfare, the national economy, and the quality of our natural environment.[2] The collection, transport and disposal of America's solid waste requires a fluid interstate network of numerous participants performing countless transactions and contracts that constantly cross county and state lines. Millions of tons of solid waste cross county and state lines each year, including California's, with substantial impacts on interstate commerce. AR 31.

Landfill disposal is the most common and cost effective method for the ultimate disposal of municipal solid waste. Modern landfills are extensively

---

[2]     Except as otherwise noted, the statement of facts is drawn from the Amended Complaint, allegations of which must be taken as true for purposes of the motion to dismiss which is under review. *Altmann v. Republic of Austria*, 317 F.3d 954, 962 (9th Cir. 2002).

engineered facilities that are located, designed, operated and monitored to ensure compliance with multiple levels of federal and state regulations. AR 29-30. Regulatory protections under the federal Resource Conservation and Recovery Act ("RCRA") and state regulation have led to the closure of small local dumps and the consolidation of landfill capacity at large regional landfills with sophisticated environmental controls and economies of scale. These regional landfills rely on waste collected from wide areas rather than within the boundaries of a single political jurisdiction in order to fund their environmental safeguards and provide economical disposal options to government agencies, businesses and individuals. AR 30, 34, 37.

Waste management is one the most important challenges in the Bay Area, a region which faces space limitations, high land values, and unfavorable hydrogeological conditions that make it impossible or impractical to establish safe waste disposal facilities in many locations. For many Bay Area communities, dependence on out-of-county facilities is essential to meeting waste disposal needs. AR 30-31. Solano County is the third largest county by area in the Bay Area, but it contains only about 5.5% of the region's overall population. As one of the least populated and least urbanized parts of the Bay Area, Solano County serves an important role in supporting regional waste management needs. AR 31.

## II. THE POTRERO HILLS LANDFILL

The Potrero Hills Landfill ("PHLF") is a state-of-the-art, regional landfill. As one of only two landfills in Solano County (both of which are privately owned), it is a major component of California's waste disposal infrastructure. Located adjacent to Travis Air Force Base and the I-80 transportation corridor, the 320-acre facility is situated in a valley where the underlying clay soils are impermeable. These conditions make PHLF's location ideal for use as a waste disposal facility in

a region of great demand and low supply. AR 32. PHLF's operations and the waste collection and transfer activities that support it are conducted in and affect interstate commerce. PHLF receives approximately 900,000 tons of solid waste on an annual basis, approximately 600,000 tons of which comes from jurisdictions outside of Solano County including Sonoma, Contra Costa and Santa Clara Counties, as well as from the states of Nevada and Oregon. AR 32.

The former owner of PHLF, Republic Services, Inc. ("Republic"), acquired Allied Waste Industries, Inc. ("Allied") pursuant to a June 2008 merger agreement. At the time of that transaction, Republic was the third largest waste hauling and disposal company in the country and Allied was the second largest. AR 33. The United States and seven states (including California) sued to block the merger because of its anti-competitive effects, such as bringing PHLF and other major Northern California landfills under one owner. *See* 73 Fed. Reg. 76,383 (Dec. 16, 2008). The parties agreed to a Consent Judgment in December 2008 that required the divestiture of PHLF. *See United States v. Republic Servs., Inc.*, 2010 WL 2780908 (D.D.C. July 15, 2010).

The United States and the State of California sought the divestiture of PHLF because the merger otherwise would have reduced from three to two the number of significant competitors for the disposal of solid waste operating in the Bay Area counties of Contra Costa, Solano and Alameda. The divestiture order – based on the assumption of a PHLF that could serve the regional market – allowed a new entrant to the Bay Area market to offer solid waste disposal services in competition with the two largest operators. AR 33. Appellant Waste Connections, Inc. purchased PHLF on April 21, 2009 in reliance on and in furtherance of the Consent Judgment's goal of promoting industry competition. AR 33-34.

### III. SOLANO COUNTY MEASURE E

Measure E is a ballot initiative enacted by Solano County voters on November 6, 1984, more than twenty-five years ago. The measure states in relevant part:

> The County of Solano shall not create a policy, adopt a resolution or ordinance, enter into a contract or in any manner allow for the importation of any solid waste . . . which originated or was collected outside the territorial limits of Solano County which will bring the cumulative total amount of such imported solid waste in excess of 95,000 tons per year.

AR 41. Thus, Measure E prohibits out-of-county solid waste from entering Solano County in excess of 95,000 tons per year, which will cause a reduction of approximately 66% of waste received by PHLF alone. AR 34. Measure E places no limits on the generation or disposal of Solano County waste and offers no reason for the express discrimination against out-of-county waste.

Solano County has not enforced Measure E since at least July 1992 when the County Counsel determined that Measure E is unconstitutional and unenforceable in light of then-recent decisions by the U.S. Supreme Court, *Fort Gratiot Sanitary Landfill v. Michigan Dep't of Natural Res.*, 504 U.S. 353, 361 (1992) and *Chemical Waste Mgmt. v. Hunt*, 504 U.S. 334 (1992). AR 36. Soon after the determination by Solano County officials that Measure E is unconstitutional, the Legislative Counsel of California issued a separate legal opinion in August 1992 concluding that Measure E is "protectionist and impermissibly discriminatory against interstate commerce" under legal precedent. *Id.* The County has never incorporated Measure E into any of the County's administrative provisions

7

1  governing solid waste.  *See* Solano County Code Ch. 23; Solano County General
2  Plan at 386-90.[3]

3        Measure E conflicts with Solano County's and other California Counties'
4  regional approach to solid waste management, which is required by the California
5  Integrated Waste management Act ("IWMA").  Cal. Pub. Res. Code §§ 40000 *et*
6  *seq.*  The expensive, heavily regulated, state-of-the-art, regional landfills of Solano
7  County provide a vital resource to other in-state and out-of-state jurisdictions.  Of
8  the twenty-one California counties from which PHLF has received waste, five
9  counties do not have any active permitted landfills within their jurisdictions and
10  two additional counties have very limited, in-county landfill capacity.
11  Enforcement of Measure E will inflict hardship on the jurisdictions without landfill
12  capacity, disrupting the cooperative waste management efforts of local
13  governments codified in County Solid Waste Management Plans under the IWMA,
14  and possibly necessitating expensive efforts to develop and permit local dumps.
15  AR 30-31, 37.

16

17  **IV.   THE PHLF EXPANSION PROJECT AND RELATED LITIGATION**

18        PHLF operates pursuant to a 1989 county-issued Use Permit, U-88-33.
19  AR 33.  In 2002, PHLF applied to Solano County for a permit revision to authorize
20  the expansion of the landfill from 320 to 580 acres ("Expansion Project").  *Id.*  The
21  Expansion Project is necessary to extend the life of the landfill, which is otherwise
22  expected to reach its existing capacity in approximately 2011.  *Id.*

23

24  _____

25  [3]    Solano County General Plan:  "Planning for a Sustainable Solano County,"
26  *available at* http://solanocountygeneralplan.net/GP%20Documents/12-15-
      08/Solano_County_GP_12-11-2008.pdf.

27

28

1    Solano County first approved and certified the environmental impact report
2  ("EIR") for the Expansion Project on September 13, 2005.  Interest groups,
3  including some of the Appellees, challenged the County's approvals under CEQA
4  in *Protect the Marsh v. County of Solano*, Case No. FCS026839 (Solano County
5  Super. Ct. filed Oct. 13, 2005).  The superior court twice found the EIR deficient in
6  certain aspects.  The court, however, specifically rejected Appellees' attempt to
7  invoke Measure E as a basis for challenging the EIR and the Expansion Project,
8  ruling that Measure E was of questionable constitutional validity and the County
9  was entitled to disregard Measure E in approving the expansion permit.  *See*
10  *Protect the Marsh*, slip op. at 4 (Oct. 14, 2008, decision on motion for order
11  accepting final return of peremptory writ of mandate).  On November 3, 2009, the
12  superior court issued an order upholding the County's most recent certification of
13  the revised EIR, and entered final judgment upholding the approvals for the
14  Expansion Project.  An appeal of that decision is now pending in the state appellate
15  court.

16
17  **V.  STATE MANDAMUS PETITIONS TO COMPEL MEASURE E ENFORCEMENT**

18    After having failed in their attempts to use Measure E to block the expansion
19  of PHLF in the CEQA challenges to the PHLF Expansion Project, Appellees filed
20  three separate lawsuits in June and August 2009, each seeking a writ of mandate to
21  compel the County to enforce Measure E.[4]  The petitions named Solano County as

---

22
23    [4]    The three state petitions for writ of mandate were styled as:  *N. Cal.*
24  *Recycling v. County of Solano*, Case No. FCS033687 (Solano County Super. Ct.
      filed June 10, 2009); *Sustainability, Parks, Recycling and Wildlife Legal Defense*
25  *Fund v. County of Solano*, Case No. FCS033700 (Solano County Super Ct. filed
      June 12, 2009); and *Sierra Club v. County of Solano*, Case No. FCS034073
26  (Solano County Super Ct. filed Aug. 10, 2009).

27
28

Defendant.  Additionally, two of the petitions named Appellants Potrero Hills

Landfill, Inc. and/or Waste Connections, Inc. as Real Parties in Interest.  None of

the remaining twenty-one federal Plaintiffs were named parties to the state cases.

After the dismissal of the federal challenge to Measure E under review here, ten

Appellants subsequently intervened in the state cases to voice their objections to a

judicial decree compelling Measure E's enforcement.[5]  Ten other Plaintiffs below

elected not to intervene in the state litigation and are not participating in this

appeal.[6]  One Appellant, Waste Connections of California, Inc., did not intervene

in the state litigation.

On May 12, 2010, Solano County Superior Court Judge Paul Beeman issued

a joint ruling on all three petitions granting a declaration and writ of mandate that

Solano County enforce Measure E, but denying the petitions to the extent they

sought to set aside the County's permit for the PHLF Expansion Project because

Appellees failed to raise Measure E during the administrative proceedings

underlying the permit.  Final judgments for these petitions have not yet been

entered.

---

[5]     The ten Appellants who intervened in the state cases are:  BLT Enterprises of Sacramento, Inc, Brentwood Disposal Service, Inc.; Concord Disposal Service, Inc.; Contra Costa Waste Service, Inc.; Discovery Bay Disposal, Inc.; Oakley Disposal Service, Inc.; Pittsburg Disposal and Debris Box Service, Inc.; Rio Vista Sanitation Service, Inc.; TrashPros, LLC; and West Coast Recycling and Transfer, Inc.

[6]     Those ten Plaintiffs not participating in the state litigation or this appeal are: Novato Disposal Service, Inc.; Pacific Coast Disposal Corporation; Redwood Empire Disposal, Inc.; Rohnert Park Disposal, Inc.; Santa Rosa Recycling and Collection, Inc.; Sunrise Garbage Service, Inc.; Timber Cove Recycling, Inc.; West Sonoma County Disposal Service, Inc.; West Sonoma County Transfer, Inc.; and Windsor Refuse and Recycling, Inc.

## VI.   APPELLANTS' FEDERAL COMPLAINT AND THE DISTRICT COURT'S DISMISSAL

Appellants' one-count Amended Complaint argues that Measure E violates the Commerce Clause of the U.S. Constitution on its face and as applied. Specifically, Appellants contend that Measure E falls under the category of *per se* unconstitutionality because it discriminates against waste by place of origin on its face, by its purpose, and in practical effect in violation of U.S. Supreme Court and Ninth Circuit law.  Appellants were joined by the County and State of California in opposing dismissal of the federal suit.  *See* County Opp'n Br. 5 (Dist. Ct. Dkt. 42) ("[t]he County respectfully requests that [the federal court] retain jurisdiction and promptly decide the constitutional issue presented in the Amended Complaint."). Yet the district court dismissed the case under the *Younger* abstention doctrine, which is intended to apply in narrow circumstances where necessary to preserve comity between state and federal interests.  The court separately entered judgment on December 23, 2009 and Appellants timely filed their notice of appeal on January 22, 2010.

## **STANDARD OF REVIEW**

This Court reviews *de novo* the district court's order granting abstention under the *Younger* doctrine.  *See Green v. City of Tucson*, 255 F.3d 1086, 1093 (9th Cir. 2001) (en banc) (overruling prior cases applying an abuse of discretion standard to district court abstention orders) (*overruled in part on other grounds by Gilbertson v. Albright*, 381 F.3d 965, 976-78 (9th Cir. 2004)).  Review of abstention orders are confined to "the status of the state court proceeding at the time of the district court's decision rather than on its *current* status on appeal" and should therefore "not [be] influenced" by any subsequent developments in the state litigation.  *Wiener v. County of San Diego*, 23 F.3d 263, 266 (9th Cir. 1994).

## SUMMARY OF THE ARGUMENT

The district court's application of the *Younger* abstention doctrine was reversible error. Abstention was improper under the circumstances of this case and resulted in an impermissible enlargement of the *Younger* doctrine. *Younger* is inapplicable here because the mandamus petitions filed by private Intervenors-Appellees to compel Solano County to enforce an unconstitutional ordinance against the County's will are not state-initiated enforcement proceedings to which *Younger* applies.

Second, *Younger* abstention cannot be granted in favor of state litigation that lacks an important state interest within the meaning of *Younger*. Both Solano County and the State of California have for over eighteen years considered Measure E an unconstitutional restriction on commerce, and both have expressly disavowed any interest in enforcing Measure E. The state petitions are lawsuits *against* the County, and both California and the County explicitly advocated in favor of the federal court's review of Measure E. There is no basis to abstain under *Younger* in a case such as this because federal adjudication will not undermine comity between the federal and state governments.

Additionally, application of the *Younger* abstention was not justified here because the district court's review of Measure E would not have enjoined state proceedings in a way *Younger* disapproves. Federal jurisdiction over Appellants' Amended Complaint would not have prohibited the state court from proceeding to decide the merits of Intervenors-Appellees' writ petitions. Under well settled law, the mere potential for the state and federal courts to reach conflicting legal conclusions in parallel proceedings concerning the same issues or subject matter does not justify abstention. Finally, the district court's abstention impermissibly denied twenty-one Plaintiffs not party to the state litigation their day in court, violating principles of due process expounded in this Court's case law.

Abstention is a narrow exception to a district court's obligation to exercise its Congressionally mandated jurisdiction. The district court's abstention analysis lost sight of that principle and the limited scope of the *Younger* doctrine. Thus, Appellants respectfully request the district court judgment be reversed and remanded.

## **ARGUMENT**

**I.  THE DISTRICT COURT ERRED BY ABDICATING ITS MANDATORY JURISDICTION UNDER THE *YOUNGER* ABSTENTION DOCTRINE**

Abstention was unwarranted here where twenty-three Plaintiffs, the Defendant Solano County, and the State of California as amicus were denied their preferred federal forum in favor of a civil action brought by private advocacy groups. *Younger* abstention has never been allowed on such facts, and controlling Supreme Court and Ninth Circuit precedent dictate that the district court should hear the case.

Federal courts have "no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given. The one or the other would be treason to the Constitution." *Cohens v. Virginia*, 19 U.S. 264, 404 (1821). The courts of the United States are "bound to proceed to judgment and to afford redress to suitors before them in every case to which their jurisdiction extends." *Chicot County v. Sherwood*, 148 U.S. 529, 534 (1893). Federal courts have a "duty to take such jurisdiction" and afford "[t]he right of a party plaintiff to choose a Federal court where there is a choice." *Willcox v. Consolidated Gas Co.*, 212 U.S. 19, 40 (1909). Underlying these assertions is the "undisputed constitutional principle that Congress, and not the Judiciary, defines the scope of federal jurisdiction within the constitutionally permissible bounds." *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350 (1989) ("*NOPSI*") (citing *Kline v. Burke Construction Co.*, 260 U.S. 226, 234 (1922)).

13

### A. Abstention is Rare and Limited to Specific and Unusual Circumstances Not Present Here

Because federal jurisdiction is defined and compulsory, federal courts must not lightly abstain from the exercise of jurisdiction that has been conferred. The Supreme Court has directed that "abstention rarely should be invoked." *Ankenbrandt v. Richards*, 504 U.S. 689, 705 (1992). Abstention is an extremely narrow exception to the rule that federal courts have a "virtually unflagging obligation" to "exercise the jurisdiction given them." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976); *see also Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 728 (1996) (abstention is "an extraordinary and narrow exception to the duty of the District Court to adjudicate a controversy properly before it.").

The "pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 292-93 (2005). Indeed, a federal court's duty to exercise jurisdiction is particularly important in the context of a section 1983 suit such as this because "the very purpose of [section] 1983 is to interpose the federal courts between the states and the people, as guardians of the people's federal rights – to protect the people from unconstitutional action under color of state law." *Mitchum v. Foster*, 407 U.S. 225, 242-43 (1972).

The district court incorrectly abstained under the *Younger* abstention doctrine, overlooking controlling Supreme Court and Ninth Circuit law that defines the strict requirements for that doctrine's application. *Younger* abstention only applies when (1) "state-initiated proceeding[s] [are] ongoing" when the federal action is filed, (2) the state-initiated proceedings "implicate[] important state interests," (3) the state-initiated proceedings provide adequate opportunity to raise the federal claims, and (4) the federal court action would enjoin the state-initiated proceedings or have the practical effect of doing so. *AmerisourceBergen Corp. v.*

*Roden*, 495 F.3d 1143, 1148-49 (9th Cir. 2007) (quoting *Gilbertson*, 381 F.3d at 978).  The doctrine will not apply unless each requirement is "strictly met."  *Id.* at 1148.

The mandamus petitions filed by private advocacy groups against Solano County plainly are not "state-initiated proceedings," nor do they implicate important state interests for purposes of *Younger*.  Rather, the state litigation derives solely from Intervenors-Appellees' private interests in blocking the PHLF Expansion Project and commercial interests in diverting the flow of recyclable commodities to benefit private companies and recycling programs outside Solano County.  These private interests neither give rise to concerns of comity nor warrant a federal court's deference.  Moreover, the policies underlying the *Younger* doctrine are not implicated here because federal jurisdiction over this challenge to Measure E will not enjoin state proceedings as defined by *Younger*.

### B.   Writ Petitions Filed By Private Parties Are Not State Proceedings To Which *Younger* Applies

In *Younger*, a plaintiff in a federal action challenged the constitutionality of a state statute under which he was being criminally prosecuted in state court.  401 U.S. at 39.  Because the state criminal proceeding offered a sufficient forum for the plaintiff to raise his constitutional defense, the Supreme Court held that the district court should have abstained from hearing the plaintiff's claim and request for injunctive relief.  The *Younger* court stated as a general rule that federal district courts should refrain from enjoining pending state court criminal proceedings except under special circumstances such as when the state prosecution is conducted in bad faith.  *Id.* at 53-54.  Abstention, the Court recognized, was warranted by traditional equitable principles and "[o]ur Federalism['s]" notions of comity among the dual system of State and Federal government, that is, "a proper respect for state functions" and the "belief that the National Government will fare best if the States

1   and their institutions are left free to perform their separate functions in separate

2   ways." *Id.* At the same time, the Court explained that comity does not require

3   "blind deference" to the states in every scenario:

> What the concept does represent is a system in which there is
> sensitivity to the legitimate interests of both State and National
> *Governments*, and in which the National Government, anxious though
> it may be to vindicate and protect federal rights and federal interests,
> always endeavors to do so in ways that will not *unduly interfere* with
> the legitimate *activities of the States*.

*Id.* at 44 (emphasis added).

     The abstention doctrine derived from *Younger* applies most clearly in cases

involving pending state criminal prosecutions. *See, e.g.*, *Dubinka v. Judges of the

Superior Court*, 23 F.3d 218 (9th Cir. 1994). The Supreme Court later expanded

*Younger* abstention to apply to civil proceedings that are "akin to a criminal

prosecution," *see, e.g.*, *Huffman v. Pursue, Ltd.*, 420 U.S. 592 (1975) (state's civil

enforcement of a nuisance statute); *Middlesex County Ethics Comm. v. Garden

State Bar Ass'n*, 457 U.S. 423, 432 (1982) (state's enforcement of attorney

discipline rules), and to civil proceedings in which the state acts as a party to

vindicate its important sovereign interests, *see, e.g.*, *Trainor v. Hernandez*, 431

U.S. 434, 444 (1977) (lawsuit brought by the state to recover fraudulently obtained

state-issued benefits).

     The *Younger* doctrine has also been narrowly applied in purely civil

proceedings which implicate state courts' "important interests in administering

certain aspects of their judicial systems." *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1,

12-13 (1987) (requiring dismissal of a section 1983 action challenging the state

judiciary's bond requirement for appealing jury verdicts because the federal case

implicated the entire process "by which the State compels compliance with the

judgments of its courts"); *see also Juidice v. Vail*, 430 U.S. 327, 334 (1977)

(abstention in favor of state contempt proceedings because contempt orders were "at the core of the administration of the State's judicial system").

While the principles of *Younger* have been narrowly applied outside the criminal enforcement context, the Supreme Court's latest substantive decision on the scope of *Younger* makes clear the abstention doctrine is not triggered in the civil context unless a federal injunction is requested that would create an "undue interference with state proceedings." *See New Orleans Pub. Serv., Inc. v. Council of New Orleans* ("*NOPSI*")*,* 491 U.S. at 359. The 1989 *NOPSI* decision is controlling here and calls for reversal.

In *NOPSI*, a New Orleans electric utility filed a state petition for review of a City Council utility rate order and a federal section 1983 action for declaratory and injunctive relief against the operation of that order. The Supreme Court found the district court's *Younger*-based abstention improper. While the state court petition for review did implicate a substantial state interest in regulating utility rates, it was nonetheless not the "type of proceeding to which *Younger* applies." *Id.* at 367. Despite the limited extension of *Younger* to the civil context, the Supreme Court stated that "it has never been suggested that *Younger* requires abstention in deference to a state judicial proceeding *reviewing legislative or executive action*." *Id.* at 368 (emphasis added). To the contrary, the Court pronounced, "such a broad abstention requirement would make a mockery of the rule that only exceptional circumstances justify a federal court's refusal to decide a case in deference to the States." *Id.*

The Court concluded that the Council's ratemaking decision was a completed legislative action and that the state-court review of that action was not an extension of the legislative process. *Id.* at 372. The relief sought in federal court therefore did not represent "the interference with ongoing judicial proceedings against which *Younger* was directed," but was, "insofar as our policies

of federal comity are concerned, no different in substance from a facial challenge to an allegedly unconstitutional statute or zoning ordinance – *which we would assuredly not require to be brought in state courts*." *Id.* at 372-73 (emphasis added).

The rules gleaned from the Supreme Court's decisions concerning *Younger*'s applicability in the civil context can be distilled as follows:  the *Younger* doctrine does not apply in civil cases unless (1) the state proceeding is an enforcement action akin to a criminal prosecution or where the state is otherwise vindicating its sovereign interests as a party, or (2) the "civil proceedings involv[e] certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." *NOPSI*, 491 U.S. at 367-68.  *Younger* does not apply "in deference to a state judicial proceeding reviewing legislative or executive action." *Id.*

Unmistakably, the writ petitions filed in state court by private advocacy groups seeking to compel Solano County to enforce a local ordinance long recognized by the County as unconstitutional are not the type of state proceedings warranting deference under *Younger*.  The writ proceedings are not akin to a criminal enforcement action brought by a state and neither Solano County nor the State of California is acting in those proceedings as a plaintiff to vindicate state interests.  In fact, both Solano County and the State have filed briefs in the state proceedings opposing enforcement of Measure E.  Nor does the issue of Measure E's validity have any unique relevance to the integrity or abilities of California's judiciary.  Instead, the "state proceedings" here are nothing more than the state court's review of a local "legislative action." *NOPSI* makes clear that local government actions such as this provide no grounds for abstention.  491 U.S. at 372-73.

### C.   There Are No Important State Interests Within The Meaning Of *Younger*

The second element of *Younger* is satisfied when "'the *State's* interests in the [ongoing] proceeding are so important that exercise of the federal judicial power would disregard comity between States and the National Government.'" *AmerisourceBergen*, 495 F.3d at 1149 (quoting *Pennzoil*, 481 U.S. at 11) (emphasis added).  The concerns of comity and federalism are simply nonexistent in this case where federal declaratory relief would not enjoin any sovereign state interest in enforcing Measure E, and both the County and State argued for federal review of Measure E's constitutionality.  There is simply no "*Younger*-based *reason* to abstain." *Id.* at 1149.

### 1.   Neither The State Nor The County Has Any Sovereign Interest In Enforcing Measure E

The "important state interest" requirement "relate[s] to the *State's* interest in pursuing an ongoing state proceeding."  *Ohio Bureau of Empl. Servs. v. Hodory*, 431 U.S. 471, 477 (1977) (emphasis added).  Beginning with its application to state criminal proceedings, *Younger* has always been intended to avoid federal interference with the state's authority as a sovereign "to perform their separate functions in their separate ways." *Younger*, 401 U.S. at 44.  The doctrine continues to apply only in cases where the state itself (or one of its political subdivisions) has an interest as a sovereign in the state proceeding.  *See Trainor*, 431 U.S. at 444 (emphasizing the fact that state brought suit in its *sovereign* capacity); *Mobil Oil Corp. v. Long Beach*, 772 F.2d 534 (9th Cir. 1985) (*Younger* inapplicable where the state proceedings involved the state acting solely in its proprietary capacity, "not as a sovereign"); *Am. Int'l Underwriters, Inc. v. Cont'l Ins. Co.*, 843 F.2d 1253, 1257 (9th Cir. 1988) (*Younger* appropriate when necessary to "ease friction between federal and state sovereigns"); *Gilbertson*, 381 F.3d at 978 (calling for "state-initiated proceeding[s]").

Examples of the cases in which *Younger* applies illustrate the point that the state proceedings must involve a conflict between federal and state sovereigns, which necessarily requires that the state proceedings implicate a state's assertion of sovereign authority. *See Huffman*, 420 U.S. 592 (state proceeding brought by county to enforce nuisance laws); *Middlesex*, 457 U.S. 423 (state proceeding brought by county ethics committee to enforce attorney discipline rules); *San Jose Silicon Valley Chamber of Commerce Political Action Comm. v. City of San Jose*, 546 F.3d 1087 (9th Cir. 2008) (state proceeding brought by city commission to enforce campaign finance laws); *M&A Gabee v. Cmty. Redevelopment Agency of the City of Los Angeles*, 419 F.3d 1036 (9th Cir. 2005) (state proceeding brought by city redevelopment agency to exercise power of eminent domain); *Gilbertson*, 381 F.3d 965 (state proceeding brought by state board to revoke land surveyor's license); *Baffert v. Cal. Horse Racing Bd.*, 332 F.3d 613 (9th Cir. 2003) (state proceeding brought by state administrative board to enforce horse racing laws); *Meredith v. Oregon*, 321 F.3d 807 (9th Cir. 2003) (state proceeding brought by state to enforce zoning ordinance ); *Woodfeathers, Inc. v. Washington County*, 180 F.3d 1017 (9th Cir. 1999) (state proceeding brought by county to enforce solid waste ordinance).

In contrast, the "important state interest" element of *Younger* has been found lacking where the state proceedings do not involve a state's assertion of sovereign authority. *See, e.g.*, *Goldie's Bookstore, Inc. v. Super. Ct. of Cal.*, 739 F.2d 466 (9th Cir. 1984) (private unlawful detainer action does not implicate state interests); *Mitofsky v. Super. Ct.*, 703 F.2d 332, 338 (9th Cir. 1983) (private tort litigation does not implicate state interests).

This Court's recent decision in *AmerisourceBergen*, 495 F.3d 1143, is directly on point to the present appeal and, along with the Supreme Court's *NOPSI* decision, calls for reversal. In *AmerisourceBergen*, a private litigant sued his

1  former employer in state court alleging breach of an employment contract.  After

2  several years of litigation in the state court, the defendant company filed its own

3  action in federal district court asserting that the employee breached the

4  employment contract.  The district court dismissed pursuant to *Younger*, reasoning

5  that resolving the company's claims at the federal level would interfere with the

6  ongoing state proceedings "regarding almost-entirely overlapping issues."  *Id.* at

7  1149.  Despite the fact that the state proceedings did not implicate an expression of

8  sovereign authority by California or one of its political subdivisions, the district

9  court found the important state interest element satisfied by concluding that

10  California had an "'important interest in the enforcement of its [courts'] judgments

11  and orders'" and abstention was appropriate to avoid creating a potential conflict

12  with orders issued in the state litigation  *Id.* at 1149.

13         This Court reversed, holding that *Younger* abstention was improper "because

14  no important state interest [was] implicated" in the state proceedings filed by a

15  private party to vindicate private rights.  *Id.*  In that setting, the district court erred

16  in broadly interpreting *Younger* to find the "important state interest" requirement

17  satisfied by California's interest in enforcing a single state court judgment.

18  According to this Court, the state's interest in enforcing a state court judgment in a

19  single "individual case" – "as opposed to a state's wholesale interest in preserving

20  its procedure for posting an appeal bond [citing *Pennzoil*, 481 U.S. at 12-14], or its

21  interest in retaining a particular contempt of court scheme [citing *Juidice*, 430 U.S.

22  at 330], [is not] sufficiently 'important' to satisfy *Younger*'s second threshold

23  element."  *Id.* at 1150.

24         Other Courts of Appeals have similarly recognized these limits on *Younger*'s

25  application.  In *Philip Morris, Inc. v. Blumenthal*, 123 F.3d 103 (2d Cir. 1997), the

26  Second Circuit held that the "important state interest" requirement is satisfied only

27  where "the state action concerns the central sovereign functions of state

28

21

government." *Id.* at 105-06. The requirement was not met by the state attorney general's state court suit for money damages against tobacco manufacturers because "[t]he monetary relief sought by the state also would be available to a private citizen" and therefore the state proceedings could not be considered a "sovereign enforcement proceeding." *Id.* at 106. *See also Cate v. Oldham*, 707 F.2d 1176, 1183 (11th Cir. 1983) (*Younger* inapplicable to a federal section 1983 suit to enjoin an ongoing state civil action for malicious prosecution brought by a state and its attorney general against the federal plaintiff because the civil action with the state as plaintiff "serves no function different from that of private plaintiffs in purely private proceedings").

All of these cases demonstrate that the "important state interest" element of the *Younger* doctrine is absent here, where neither Solano County, the State of California, nor any other political subdivision imbued with sovereign authority has asserted any interest in enforcing Measure E. *See* County Opp'n Br. 5 (Dist. Ct. Dkt. 42) (noting both Solano County Counsel and the Legislative Counsel of California have issued legal opinions finding Measure E unconstitutional). Unlike the cases applying *Younger* to avoid federal interference with state proceedings either brought by a state sovereign or implicating a state sovereign's asserted authority, this case involves neither. Instead, the mandamus petitions represent attempts by private advocacy groups, motivated by their stated goal to thwart the PHLF Expansion Project, to compel Solano County against its will to enforce a long-forgotten ballot initiative the County believes is unconstitutional. The state proceedings implicate no important state interest for purposes of *Younger*.

The mandamus petitions brought by private parties to litigate private interests are no different from the state proceedings in *AmerisourceBergen* and must similarly be deemed insufficient to meet *Younger*'s second element. *See AmerisourceBergen*, 495 F.3d at 1148. Moreover, any interest California may

have in the ability of its courts to adjudicate private disputes is generic and not sufficiently important in the context of a single case. *Id.* at 1150. In fact, California opposed abstention in its amici brief. The district court's abstention in no way promoted principles of comity between the state and federal government. Abstention is simply not justified out of concern for avoiding federal conflict with Appellees' private interests in Measure E.

2.   The *Woodfeathers* Case Is Readily Distinguishable And Does Not Justify The District Court's Abstention

The district court's abstention analysis overlooks critical *Younger* case law and misreads this Court's earlier decision in *Woodfeathers*, 180 F.3d 1017 (9th Cir. 1999). *Woodfeathers* involved a waste hauler's federal challenge to a county's solid waste ordinance which required a county-issued certificate to authorize the transportation and disposal of solid waste. The county was prosecuting civil enforcement proceedings against the hauler at the time the hauler filed the federal suit. *Id.* at 1019. Abstention was deemed appropriate to avoid federal interference with the state proceedings brought by the county and which implicated the county's important sovereign interest in enforcing its solid waste laws. *Id.* at 1021.

The district court cited *Woodfeathers* for the proposition that "the Ninth Circuit has found that a county's enforcement of its local solid waste ordinance implicates important state interests for the purposes of *Younger* abstention." AR 17. While true that "*a county's enforcement*" of its solid waste ordinance implicates a state interest, the district court ignored the key distinctions warranting a different result: the mandamus petitions <u>do not</u> represent the "County's enforcement" and Measure E is not a part of Solano County's Code or its provisions governing solid waste. That the state proceedings in *Woodfeathers* involved a county's enforcement of its waste law is a crucial distinction between that case and the one at hand. Indeed, in finding a sufficient "state interest" the

*Woodfeathers* court clearly based its holding on the county's enforcement role in the state proceedings. *Id.* at 1021 ("[c]ivil actions *brought by a government entity* to enforce nuisance laws have been held to justify *Younger* abstention") (emphasis added) (citing *Huffman*, 420 U.S. at 604 (abstention appropriate where the "state brought civil action against" a violator of obscenity laws) and *World Famous Drinking Emporium, Inc. v. City of Tempe*, 820 F.2d 1079, 1082 (9th Cir. 1987) (civil action "brought by municipality" to obtain compliance with municipal zoning ordinance)).

In stark contrast to *Woodfeathers*, Solano County is not attempting to enforce Measure E. The state proceedings were brought by private advocacy groups to block the PHLF Expansion Project. The state proceedings do not represent an attempt by the County to enforce Measure E, but an attempt by private parties to force the County government to enforce an unconstitutional ballot initiative against the County's will. *Woodfeathers* does not justify the district court's abstention, rather, it highlights the district court's error.

3. The County Defendant And The State Argued For Federal Adjudication Of Measure E's Constitutionality, Erasing Any Comity Concerns

*Younger* abstention does not apply where "the State expressly urge[s] . . . the District Court to proceed to an adjudication of the constitutional merits." *Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc.*, 477 U.S. 619, 626 (1986). "If the State voluntarily chooses to submit to a federal forum, principles of comity do not demand that the federal court force the case back into the State's own system." *Hodory*, 431 U.S. at 479-80; *See also Brown v. Hotel & Rest. Employees & Bartenders Int'l Union Local 54*, 468 U.S. 491, 500 n.9 (1984) ("[s]ince the State's Attorney General . . . agreed to our adjudication of the controversy, considerations of comity are not implicated"); *Kleenwell Biohazard Waste & Gen. Ecology*

24

*Consultants, Inc. v. Nelson*, 48 F.3d 391, 394 (9th Cir. 1995) (the state waived *Younger* abstention by expressly urging the district court to adjudicate merits); *Columbia Basin Apt. Ass'n v. City of Pasco*, 268 F.3d 791, 800 (9th Cir. 2001) (accord, citing cases).

In this case, both Solano County and the State of California (as an amicus) filed briefs opposing abstention. *See* County Opp'n Br. 5 (Dist. Ct. Dkt. 42); State Opp'n Br. 2 (Dist. Ct. Dkt. 40).[7] Under well settled law, the state governments' express preference for the federal forum precluded *Younger* abstention. Indeed, by dismissing the case in the face of the County's and State's effort to keep the case in federal court, the district court actually violated *Younger*'s policy objective that federal courts should "avoid unnecessary conflict between state and federal governments." *United States v. Morros*, 268 F.3d 695, 707 (9th Cir. 2007).

---

[7]     The district court did not address the County's and State's preference for federal adjudication and attempted to justify abstention on the mistaken belief that "the participation of the Attorney General on behalf of the State as amicus underscores the State's keen interest in the potential enforcement of Measure E." AR 17. This error highlights the district court's misreading of the purposes of *Younger* to promote comity between state and federal governments and is inconsistent with above cited cases that *Younger* does not apply where the state government submits to the federal forum. *See also Kendall-Jackson Winery Ltd. v. Branson*, 212 F.3d 995, 997 (7th Cir. 2000) ("Abstention is for the states' benefit, and if a state is content with the . . . federal litigation . . . then abstention serves no point."). Moreover, the state's common interest in the subject matter of the proceedings is not an "important state interest" for purposes of *Younger*. *See NOPSI*, 491 U.S. at 365 ("when we inquire into the substantiality of the State's interest in its proceeding we do not look narrowly to its interest in the *outcome* of the particular case.").

1

### D. Federal Review Of Measure E Would Not Enjoin State-Initiated Proceedings For Purposes Of *Younger*

2

This Circuit's explicit recognition of a fourth requirement for *Younger*'s

3

applicability is intended to prevent the "tendency for the district courts . . . to lose

4

their way" and over-apply *Younger* abstention. *Green*, 255 F.3d at 1089. The

5

fourth element is "vital and indispensable" and requires "the policies behind the

6

*Younger* doctrine must be implicated by the actions requested of the federal court."

7

*AmerisourceBergen*, 495 F.3d at 1149. More specifically, the district court may not

8

abstain unless the federal court action would enjoin a "state-initiated proceeding"

9

or have the practical effect of doing so. *AmerisourceBergen*, 495 F.3d at 1149

10

(quoting *Gilbertson*, 381 F.3d at 978).

11

The district court held the "state cases could be rendered moot by a decision

12

from this Court" and that therefore the requested relief would "effectively enjoin

13

the state court proceeding, depriving the State Court of the opportunity to resolve

14

matters of important state interest." AR 18. The district court's decision resulted

15

in the very "oversimplification" and misapplication of *Younger* this Court warned

16

against in *Green*, *Gilbertson*, and *AmerisourceBergen*. *See Green*, 255 F.3d at

17

1089. Simultaneous litigation of an issue in state and federal forums does not rise

18

to the level of the injunctive effect required by *Younger* for abstention to attach.

19

*AmerisourceBergen* is again dispositive. As explained in that decision, the

20

Supreme Court has "rejected the notion that federal courts should abstain whenever

21

a suit involves claims or issues simultaneously being litigated in state court merely

22

because whichever court rules first will . . . preclude the other from deciding the

23

claim or issue." *AmerisourceBergen*, 495 F.3d at 1151 (citing cases). In *NOPSI*,

24

for example, the Supreme Court held that the type of "interference" *Younger* is

25

intended to prevent does not include the potential of a federal adjudication to moot

26

or raise preclusive effects with respect to a case being litigated in state court:

27

28

> It is true, of course, that the federal court's disposition of such a case may well affect, or for practical purposes pre-empt a future – or, as in the present circumstances, *even a pending* – state court action. But *there is no doctrine that the availability or even the pendency of state judicial proceedings excludes federal courts.*

*NOPSI*, 491 U.S. at 373 (emphasis added). The "mere potential for conflict in the results of adjudications" is not the kind of "interference" that merits federal court abstention. *Colorado River*, 424 U.S. at 816. Rather, the possibility of a race to judgment is inherent in a system of dual sovereigns and, in the absence of "exceptional" circumstances, the potential for conflict is insufficient to overcome the weighty interest in the federal courts exercising their jurisdiction over cases properly before them. *Id.* at 818, *see also Marks v. Stinson*, 19 F.3d 873, 885 (3d Cir. 1994) ("the mere fact that a judgment in the federal suit might have collateral effects in the state proceeding is not interference for *Younger* abstention purposes.").

Appellants' federal suit did not seek to halt the state litigation, nor did it seek an order enjoining the state court from granting the writ petitions.[8] Contemporaneous state court review of the writ petitions would have remained possible notwithstanding federal jurisdiction over the federal suit. The only possible interference Appellants' requested relief could have had

---

[8] Appellants' motion in state court to stay the mandamus petitions pending federal review of Measure E is not the same as a federal suit which explicitly seeks to enjoin ongoing state proceedings. Here, there are no enforcement proceedings pending against any Appellant. *Compare, e.g.*, *Woodfeathers*, 180 F.3d at 1019 (federal suit sought to enjoin county from proceeding against alleged violator of nuisance law). *See also Wiener*, 23 F.3d at 267 ("*Younger* abstention does not apply when, as here, a federal plaintiff seeks a prospective injunction against prosecutions under an allegedly unconstitutional ordinance."). Additionally, the state court had independent discretion to grant or deny the stay notwithstanding the federal court's jurisdiction.

on the state litigation was the potential for the federal and state courts to reach different conclusions regarding Measure E's constitutionality. Yet the interference that may have arisen from the federal court's concurrent consideration of similar issues is conclusively not a basis for *Younger* abstention. *See NOPSI*, 491 U.S. at 373; *Colorado River*, 424 U.S. at 816; *AmerisourceBergen*, 495 F.3d at 1151 ("a potential conflict with ongoing state proceedings" is not sufficient to meet the fourth element of *Younger* abstention.). Indeed, in this scenario, "concurrent consideration, not abstention, is the solution." *Id.* at 495 F.3d at 1152; *see also Green v. Jefferson County Comm'n*, 563 F.3d 1243 (11th Cir. 2009) (abstention under *Younger* or its progeny not required where plaintiffs challenged a legislative act of a county commission under federal law while, at the same time, state law challenges to the same legislative act were pending on appeal with the state Supreme Court).

### E.    Abstention Denied Non-Parties Their Day In Court

Twenty-one companies engaged in the vital business of waste collection, hauling and recycling were denied their day in court as a consequence of the district court's abstention. The result violates the due process principle that each plaintiff be afforded his own day in court absent extraordinary circumstances. *See, e.g.*, *Richards v. Jefferson County*, 517 U.S. 793 (1996). Indeed, abstention "does not apply to non-parties to the state court litigation simply because the non-parties could have intervened in the state court litigation." *Green*, 255 F.3d at 1099.[9] *See*

---

[9]    In *Green*, the district court's abstention in favor of state case involving town residents' similar challenge to the same law was improper because it denied additional town residents not party to the state case their day in court. That town residents in both forums shared "essentially identical" interests and were represented by the same attorney did not justify abstention where the federal case

(Continued …)

*also Benavidez v. Eu*, 34 F.3d 825, 832 (9th Cir. 1994) (holding that "*Younger*'s scope is closely circumscribed to parties actually involved in state litigation"). The dismissal of Appellants' Amended Complaint impermissibly denied most federal Plaintiffs-Appellants their day in court, providing yet another reason why the district court's abstention order cannot stand.

The Supreme Court has cautioned against the application of abstention to restrict non-parties' access to federal courts. In *Doran v. Salem Inn*, 422 U.S. 922 (1975), the Court squarely addressed whether individuals who were not parties to the state litigation could proceed with a federal constitutional challenge to the statute involved in the state litigation. There, three bar owners sought an injunction in federal court against the operation of a local ordinance prohibiting topless entertainment in bars. Two had complied with the ordinance, but the third owner had not and was prosecuted in state court. *Id*. at 924-25. Despite the similarity of the parties' interests, the Court held *Younger* did not bar the two plaintiffs who did not face prosecution from pursuing their claims in federal court. The plaintiffs were not "so closely related" that they should all "be thrown into the same hopper" because "while respondents are represented by common counsel, and have similar business activities and problems, they are apparently *unrelated in terms of ownership, control, and management*." *Id.* at 928-29 (emphasis added).

The federal lawsuit subject to this appeal was brought by a diverse group of twenty-three companies based in California, Oregon and Nevada, all individually involved in the interstate solid waste and recycling business. Only two of those

---

(Continued …)

involved non-parties to the state case. 255 F.3d at 1099. Though some parts of the *Green* decision have been abrogated, its holding regarding *Younger*'s application to non-parties remains binding law.

companies, Potrero Hills Landfill, Inc. and its parent company Waste Connections, Inc., were named Real Parties in Interest in the writ petitions. Thus, twenty-one Plaintiffs who properly invoked federal jurisdiction were denied their opportunity to challenge Measure E in federal court and "improperly relegated to an exclusive state court remedy for claimed violations of their federal constitutional rights." *Green*, 255 F.3d at 1089. Because of the district court's dismissal of the Amended Complaint, ten Plaintiffs-Appellants intervened in the state court cases because they were deprived of a federal forum to resolve the constitutionality of Measure E. The opportunity to intervene in the state litigation, however, does not defuse the error. [10] *Green*, 255 F.3d at 1103.

Moreover, the additional federal Plaintiffs-Appellants (with the exception of Waste Connections of California, Inc.) are not so intertwined with Potrero Hills Landfill and Waste Connections that they should all "be thrown into the same hopper." These additional Plaintiffs-Appellants included two solid waste transfer stations operating in California and Oregon and nine different waste collection and recycling service providers all servicing their own jurisdictions in California and Nevada under the ownership of three different corporate parent companies. Each Plaintiff has its own unique concerns regarding Measure E's potential application to its business activities beyond the common interest in seeing Measure E declared unconstitutional. These Plaintiffs' business activities and interests are certainly more diverse than the interests of the three bar owners in *Doran* who were all

---

[10] That some of the federal Plaintiffs intervened in the state litigation after their federal complaint was dismissed is irrelevant. These Plaintiffs were erroneously denied their opportunity to challenge Measure E in federal court and their participation as intervenor-defendants in state proceedings cannot provide *post hoc* justification for the improper abstention. Moreover, after having been denied their day in court, eleven Plaintiffs did not intervene in the state litigation.

prevented from exhibiting topless dancers, and the town residents in *Green* who sought to challenge the state's town incorporation rules. The district court's abstention denied these parties their day in court to challenge Measure E, providing an independent reason for reversal.

## **CONCLUSION**

The district court misapplied the *Younger* abstention doctrine to a situation far outside that doctrine's limited scope as delineated by the Supreme Court's and this Court's precedent. For the foregoing reasons, Appellants respectfully request that the district court's judgment be reversed to correct the erroneous enlargement of the *Younger* doctrine, and remanded to afford Appellants their right to challenge an illegal and discriminatory ballot initiative as plaintiffs in federal court.

Dated: September 20, 2010        Respectfully Submitted,

                                  /s/ Lily N. Chinn
                               Gary J. Smith
                               Lily N. Chinn
                               Beveridge & Diamond, P.C.
                               456 Montgomery Street, Suite 1800
                               San Francisco, CA 94104-1251
                               Phone: (415) 262-4000
                               Fax: (415) 262-4040
                               Email: gsmith@bdlaw.com
                               Email : lchinn@bdlaw.com

                               James B. Slaughter
                               Graham St. Michel
                               Beveridge & Diamond, P.C.
                               1350 I Street, NW, Suite 700
                               Washington, DC 20005-3311
                               Phone: (202) 789-6000

Fax:      (202) 789-6190
Email:   jslaughter@bdlaw.com
Email:   gstmichel@bdlaw.com

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that pursuant to Federal Rule of Appellate Procedure 32(a)(7)(C) and Circuit Rule 32-1, the attached Brief for Appellants has been prepared using 14-point, proportionally spaced, Times New Roman typeface, and it contains 8,243 words.

Dated:  September 20, 2010                     Respectfully Submitted,

                                                      /s/  Lily N. Chinn
                                                   Lily N. Chinn
                                                   Beveridge & Diamond, P.C.
                                                   456 Montgomery Street, Suite 1800
                                                   San Francisco, CA 94104-1251
                                                   Phone:   (415) 262-4045
                                                   Fax:      (415) 262-4040
                                                   Email :  lchinn@bdlaw.com

1

## CERTIFICATE OF SERVICE

2      I hereby certify that I electronically filed the foregoing with the Clerk of the

3  Court for the United States Court of Appeals for the Ninth Circuit by using the

4  appellate CM/ECF system on September 20, 2010.

5      I certify that counsel for Solano County, Sierra Club, Northern California

6  Recycling Association, Sustainability, Parks, Recycling, and Wildlife Legal

7  Defense Fund are registered CM/ECF users and that service will be accomplished

8  to them by the appellate CM/ECF system.  Counsel for the California Department

9  of Justice have been served via U.S. Mail.

10

| | |
|---|---|
| James W. Laughlin, County Counsel<br>Azniv Darbinian, County Counsel<br>COUNTY OF SOLANO<br>675 Texas Street, Suite 6600<br>Fairfield, CA 94533-6342<br>T:  707.784.6140<br>F: 707.784.6862<br>Email:  jwlaughlin@solanocounty.com<br>        adarbinian@solanocounty.com<br><br>*Attorneys for Defendant County of Solano* | Robert S. "Perl" Perlmutter<br>SHUTE, MIHALY & WEINBERGER LLP<br>396 Hayes Street<br>San Francisco, CA 94102<br>T:  415.552.7272<br>F:  415.552.5816<br>Email:  perlmutter@smwlaw.com<br><br>*Attorney for Intervenors Sierra Club and<br>Northern California Recycling Association* |
| Kelly T. Smith<br>THE SMITH FIRM<br>1541 Corporate Way, Suite 100<br>Sacramento, CA 95831<br>T:  916.442.2019<br>F:  916.442.0220<br>Email:  ktsmith@thesmithfirm.com<br><br>*Attorney for Intervenor Sustainability, Parks,<br>Recycling, and Wildlife Legal Defense Fund* | Nicole Gordon<br>Kathleen Foote<br>CALIFORNIA DEPARTMENT OF JUSTICE<br>455 Golden Gate Avenue, Suite 11000<br>San Francisco, CA 94102<br>T:  415.703.1276<br>F:  415.703.5480<br>Email:  nicole.gordon@doj.ca.gov<br>        kathleen.foote@doj.ca.gov<br><br>*Attorney for Amicus Curiae State of California* |

By: _____ /s/ Lily N. Chinn _____