**No. 10-15229**

===============================================================

**UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

POTRERO HILLS LANDFILL, INC., BLT ENTERPRISES OF SACRAMENTO, INC., BRENTWOOD DISPOSAL SERVICE, INC., CONCORD DISPOSAL SERVICE, INC., CONTRA COSTA WASTE SERVICE, INC., DISCOVERY BAY DISPOSAL, INC., OAKLEY DISPOSAL SERVICE, INC., PITTSBURG DISPOSAL AND DEBRIS BOX SERVICE, INC., RIO VISTA SANITATION SERVICE, INC., TRASHPROS, LLC, WASTE CONNECTIONS, INC., WASTE CONNECTIONS OF CALIFORNIA, INC., and WEST COAST RECYCLING AND TRANSFER, INC.,

*Plaintiffs-Appellants,*

v.

COUNTY OF SOLANO,

*Defendant-Appellee,*

and

SUSTAINABILITY, PARKS, RECYCLING AND WILDLIFE LEGAL DEFENSE FUND, SIERRA CLUB, and NORTHERN CALIFORNIA RECYCLING ASSOCIATION,

*Defendants-Intervenors-Appellees.*

---

Appeal From The United States District Court
For The Eastern District of California

---

**REPLY BRIEF OF APPELLANTS**

Gary J. Smith (CA Bar 141393)
Lily N. Chinn (CA Bar 203173)
BEVERIDGE & DIAMOND, P.C.
456 Montgomery Street, Suite 1800
San Francisco, CA 94104-1251
Telephone: (415) 262-4045
Facsimile: (415) 262-4040
Email: gsmith@bdlaw.com
        lchinn@bdlaw.com

James B. Slaughter (DC Bar 417273)
Graham St. Michel (CA Bar 261882)
BEVERIDGE & DIAMOND, P.C.
1350 I Street, NW, Suite 700
Washington, DC 20005-3311
Telephone: (202) 789-6040
Facsimile: (202) 789-6190
Email: jslaughter@bdlaw.com
        gstmichel@bdlaw.com

Dated: November 17, 2010

# TABLE OF CONTENTS

Page

INTRODUCTION ...................................................................................1

ARGUMENT .........................................................................................2

I.    *YOUNGER* ABSTENTION DOES NOT APPLY ...........................2

      A.    The State Court Litigation Filed By Private Parties Is Not
           "State-Initiated Proceedings" Within The Meaning Of *Younger* .........2

           1.    *Younger* Does Not Justify The District Court's Deference
                  To The State Litigation Filed By These Private Parties .............2

           2.    The State Actions Are Not Enforcement Proceedings
                  Against PHLF ...........................................................6

      B.    There Are No "Important State Interests" For Purposes Of
           *Younger* ...............................................................................7

           1.    The "Important State Interest" Element Requires More
                  Than The State's Generic Interest In The Subject Matter
                  of State Litigation.....................................................7

           2.    The County And State Governments' Requests For
                  Federal Adjudication Eliminates *Younger*'s Policy
                  Concerns................................................................9

      C.    Federal Review Of Measure E Would Not Enjoin State-
           Initiated Proceedings For Purposes Of Younger................................10

      D.    Abstention Denied Nonparties Their Day In Court ...........................11

II.   PLAINTIFFS' LAWSUIT PRESENTS A CASE OR CONTROVERSY
     AND PLAINTIFFS HAVE STANDING TO SUE......................................12

      A.    Intervenors' State Court Actions To Compel Measure E
           Enforcement Provide Article III Standing. .........................................12

      B.    The Presence Of Three Intervenors And The County Make A
           Case or Controversy ........................................................13

III.  PLAINTIFFS HAVE PRUDENTIAL STANDING TO RAISE THE
     UNCONSTITUTIONALITY OF MEASURE E ...........................................15

IV.  PLAINTIFFS' CHALLENGE TO MEASURE E IS NOT
     TIME-BARRED ...............................................................................17

i

V.    PLAINTIFFS' INJURIES ARE RIPE FOR IMMEDIATE REVIEW .........18

    A.    Measure E Causes Plaintiffs To Suffer Present Harms.......................18

    B.    The Issues Presented Are Fit For Judicial Review ............................20

    C.    Plaintiffs Will Suffer Hardship If This Court Denies Review ...........20

VI.   ABSTENTION CAN NOT BE JUSTIFIED UNDER *PULLMAN*..............21

    A.    Measure E's Legality Under The Federal Commerce Clause Does Not Touch On A Sensitive Area Of Social Policy Upon Which Federal Courts Ought Not To Enter ........................................23

    B.    Constitutional Adjudication Cannot Be Avoided By Resolving An Uncertain Issue Of State Law..........................................................25

    C.    Ordering *Pullman* Abstention On Appeal Would Produce Inequitable Results ...............................................................................27

CONCLUSION ........................................................................................................29

# <u>TABLE OF AUTHORITIES</u>

Page

## CASES

*Abbott Lab. v. Gardner*, 387 U.S. 136, 148-149, 154 (1967)..................................20

*Action Apartment Ass'n, Inc. v. Santa Monica Rent Control Opinion Bd*,
   509 F.3d 1020, 1027 (9th Cir. 2007)....................................................................18

*AmerisourceBergen Corp. v. Roden*, 495 F.3d 1143, 1149 (9th Cir. 2007).... passim

*Arlington Heights v. Metro. Hous. Dev. Corp.*,
   429 U.S. 252, 263-64, n.9 (1977) ........................................................................15

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) .....................................................17

*Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979) ..............21

*Baggett v. Bullitt*, 377 U.S. 360, 375 (1964) ..........................................................28

*Cal. Fed. Savings & Loan Ass'n v. City of Los Angeles*,
   11 Cal. 4th. 342, 349 (1995)................................................................................26

*Canton v. Spokane Sch. Dist. No. 81*, 498 F.2d 840, 845 (9th Cir. 1974)..............22

*City of Burbank v. Burbank-Glendale-Pasadena Airport Auth.*,
   113 Cal. App. 4th 465, 481 (Cal. Ct. App. 2003) ................................................14

*City of Los Angeles v. County of Kern*, 581 F.3d 841 (9th Cir. 2009) ...................16

*City of Philadelphia v. New Jersey*, 437 U.S. 617 (1978) .......................................24

*Clarke v. Sec. Indus. Ass'n*, 479 U.S. 388, 396 (1987)............................................15

*Columbia Basin Apt. Ass'n v. City of Pasco*, 268 F.3d 791 (9th Cir. 2001) ...... 9, 27

*Confederated Salish v Simonich*, 29 F.3d 1398, 1407 (9th Cir. 1994)....................23

*Dean Milk Co. v. Madison*, 340 U.S. 349, 353 (1951) ............................................23

*Diamond v. Charles*, 476 U.S. 64 (1986) ................................................................14

*Doran v. Salem Inn*, 422 U.S. 922 (1975) ......................................................... 11, 12

*England v. Louisiana. State Bd. of Med. Exam'rs*, 375 U.S. 411 (1964)......... 28, 29

iii

*Equity Lifestyle Properties, Inc. v. County of San Luis Obispo,*
548 F.3d 1184 (9th Cir. 2008) ................................................................4

*Exxon Corp v. Heinz*, 32 F.3d 1399, 1404 (9th Cir. 1999).....................20

*Fireman's Fund Ins. Co. v. City of Lodi*, 302 F.3d 928, 940 (9th Cir. 2002) .........24

*Fort Gratiot Sanitary Landfill v. Mich. Dep't of Natural Res.*,
504 U.S. 353, 361 (1992) ....................................................... 17, 26, 27

*Gilbertson v. Albright*, 381 F.3d 965 (9th Cir. 2004) ..................................... 3, 5, 10

*Goldie's Bookstore, Inc. v. Superior Court of Cal.*, 739 F.2d 466
(9th Cir. 1984) ................................................................8

*Green v. City of Tucson*, 255 F.3d 1086, 1099 (9th Cir. 2001) ....................... 11, 12

*Harper v. PSC*, 396 F.3d 348, 356 (4th Cir. 2005)...................................24

*Huffman v. Pursue, Ltd.*, 420 U.S. 592 (1975) .........................................5

*Hughes v. Oklahoma*, 441 U.S. 322, 326 (1979) ....................................23

*INS v. Chadha*, 462 U.S. 919 (1983) ............................................... 13, 14

*Lopez v. Candaele*, 2010 U.S. App. LEXIS 19459, No. 09-56283
(9th Cir. 2010)...........................................................19

*LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1156 (9th Cir. 2000) .......................................19

*MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128-29 (2007) ....................13

*New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491
U.S. 350, 373 (1989)............................................................... 5, 7, 11

*Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc.*,
477 U.S. 619, 626 (1986) ....................................................9

*Pacific Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461
U.S. 190 (1983) ................................................................20

*Pacific Legal Found. v. State Energy Res. Cons. & Dry Comm'n,* 659 F.2d 903,
916 (9th Cir. 1981) ...........................................................19

*Philip Morris, Inc. v. Blumenthal*, 123 F.3d 103, 105-06 (2d Cir. 1997).................8

iv

*Pike v. Bruce Church*, 397 U.S. 137, 142 (1970) ....................................27

*Porter v. Jones*, 319 F.3d 483, 493 (9th Cir. 2003)................................27

*Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 728 (1996) ....................................2

*Railroad Comm'n of Texas v. Pullman Co.*, 312 U.S. 496 (1941) ................. passim

*Sable Commc'n. of Cal., Inc. v. Pac. Tel. & Tel. Co.*,

 890 F.2d 184, 187 (9th Cir. 1989) .......................................13

*Samuels v. Mackell*, 401 U.S. 66, 72 (1971)............................................11

*San Jose Silicon Valley Chamber of Commerce Politcal Action Comm.*

 *v. City of San Jose*, 546 F.3d 1087, 1092 (9th Cir. 2008) .....................................3

*San Remo Hotel v. City and County of San Francisco*,

 145 F.3d 1095, 1103 (9th Cir. 1998)........................................... passim

*Servs. v. Hodory*, 431 U.S. 471, 477 (1977) ...........................................7

*Wallace v. Kato*, 549 U.S. 384, 391 (2007) ...........................................17

*Wiener v. County of San Diego*, 23 F.3d 263 (9th Cir. 1994) ........................... 5, 10

*Wilson v. Stocker*, 819 F.2d 943, 947 (10th Cir. 1987) ...........................................14

*Wisconsin v. Constantineua*, 400 U.S. 433, 439 (1971) .................................. 25, 26

*Wolfson v. Brammer,* 616 F.3d 1045, 1063 (9th Cir. 2010) ..................................19

*Woodfeathers, Inc. v. Washington County*, 180 F.3d 1017 (9th Cir. 1999) .............8

*Younger v. Harris,* 401 U.S. 37 (1971) .......................................... passim

*Zwickler v. Koota*, 389 U.S. 241, 248 (1967) ................................... 22, 25

## STATUTES

Cal. Code Civ. Proc. § 1858 ...................................................26

## OTHER AUTHORITIES

Timothy Sandefur, *The Timing of Facial Challenges*,

 43 Akron L. Rev. 51 (2010) ...............................................18

## CONSTITUTIONAL PROVISIONS

U.S. Const. art. I, § 8, cl. 3.........................................................................23

# INTRODUCTION

The district court misapplied the *Younger* doctrine and abstained in a case far outside that doctrine's limited scope.  Intervenors-Appellees' (hereinafter "Intervenors") defense of the abstention order fails because the *Younger* doctrine counsels abstention only in the face of genuine government enforcement actions, not private mandamus actions such as are at issue here.  Three of the four *Younger* elements are unmet:  The Intervenors' lawsuits seeking a writ directed to Solano County are not state-initiated proceedings, there is no overriding state interest at stake in the superior court proceeding, and the Appellants' federal action will not enjoin the Intervenors' private actions.

This Court should also reject Intervenors' alternative theories – never reached by the district court but resurrected here – for shielding Measure E from review in federal court.  Like their *Younger* argument, Intervenors' justiciability arguments all seek the same untenable conclusion: that Plaintiffs-Appellants (hereinafter "Plaintiffs") had no choice but to stand by and await the determination of the Solano County Superior Court whether Measure E impaired their constitutional rights to engage in solid waste disposal transactions that crossed the county line.  It cannot reasonably be disputed that Intervenors' lawsuits dramatically changed the landscape and that long-dormant Measure E then loomed as a formidable threat to the business of Potrero Hills Landfill, Inc. ("PHLF") and

the waste disposal companies outside Solano County that relied upon it. With the inevitable participation of the Intervenors, Plaintiffs' federal suit brought before the district court a vigorously contested constitutional controversy with the future of PHLF hanging in the balance. None of the constraints on federal court jurisdiction argued by Intervenors barred the district court from fulfilling its duty to decide this case on the merits.

Accordingly, this case should be remanded to the district court for trial.

## ARGUMENT

## I. *YOUNGER* ABSTENTION DOES NOT APPLY

This is emphatically **not** a "classic case" for *Younger* abstention. Indeed, *Younger* abstention has never been upheld on these facts. As a judicially created exception to the federal jurisdiction mandated by Congress, abstention is an "extraordinary and narrow" doctrine which must not be liberally applied. *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 728 (1996). This Court should not be swayed into expanding the *Younger* doctrine beyond the narrow limits delineated by the law of this Circuit and the U.S. Supreme Court.

### A. The State Court Litigation Filed By Private Parties Is Not "State-Initiated Proceedings" Within The Meaning Of *Younger*

#### 1. *Younger* Does Not Justify The District Court's Deference To The State Litigation Filed By These Private Parties

The writ petitions filed in state court by private interest groups against the County are not "state-initiated proceedings" warranting a federal court's deference

under *Younger*. Intervenors simply ignore that the existence of an ongoing "state-*initiated* proceeding" is one element of a four-part *Younger* analysis this Circuit now applies. *See San Jose Silicon Valley Chamber of Commerce Politcal Action Comm. v. City of San Jose*, 546 F.3d 1087, 1092 (9th Cir. 2008) (emphasis added) (citing *AmerisourceBergen Corp. v. Roden*, 495 F.3d 1143, 1149 (9th Cir. 2007) (quoting *Gilbertson v. Albright*, 381 F.3d 965 (9th Cir. 2004) (en banc))). Instead, Intervenors rest their argument on the older case of *San Remo Hotel v. City and County of San Francisco*, 145 F.3d 1095, 1103 (9th Cir. 1998), which identifies only three elements and defines the first element simply as ongoing "state proceedings."

The *Younger* doctrine is intended to prevent federal interference with the exercise of sovereign authority by a state or its political subdivision. *See* Opening Br. at 19-23 (citing more than a dozen cases supporting view that *Younger* applies only to cases where the state proceeding involves an action initiated by the state in its sovereign capacity).[1] State court proceedings initiated by private parties hoping to induce government action raise no concerns to which *Younger* is addressed.

---

[1] The only other class of cases to which *Younger* has been found applicable is cases which implicate a state's interest in preserving certain "wholesale" aspects of state judicial systems. *AmerisourceBergen*, 495 F.3d at 1150 (distinguishing a case challenging state procedure for posting an appeal bond and a case challenging state contempt of court scheme). The state litigation here does not belong in this narrow category as Measure E's validity has no unique relevance to the integrity of California's judiciary.

Sierra Club cites only three cases for the assertion that this Court has "repeatedly abstained" where state actions were initiated by private parties. None supports abstention here.[2] *San Remo* is not truly a *Younger* case,[3] but it involved the City of San Francisco's application of a zoning ordinance against a private party who challenged the ordinance in both state and federal court. 145 F.3d at 1100. Both the state and federal cases challenged the government's sovereign authority to apply the ordinance against the plaintiff in an ongoing administrative proceeding.

Likewise, *Equity Lifestyle Properties, Inc. v. County of San Luis Obispo*, 548 F.3d 1184 (9th Cir. 2008), which merely references *Younger* as an alternative theory for dismissal, involved state and federal litigation brought by the same plaintiff to challenge a county's ongoing administrative application of its rent control ordinance against the plaintiff. Thus, as in *San Remo*, the private party who filed the state suit was also the federal plaintiff, and both the state and federal suits challenged the state-sovereign's ongoing exercise of sovereign authority against that party.

---

[2] *AmerisourceBergen* requires little discussion. There, the party arguing against abstention conceded the first element, leading the Court to <u>reverse</u> abstention under the other elements. 495 F.3d at 1147-52.

[3] The Court only cited *Younger* in restraining the plaintiff from adding a new claim to the federal complaint. *Id.* at 1103-05.

These cases stand only for the proposition that a federal court may abstain in favor of a state court action brought by the same plaintiff challenging the same exercise of state authority. They say nothing about this case, in which private parties unrelated to the federal court plaintiffs have brought a state court action seeking to initiate, not challenge, the exercise of state authority.

Ignoring the "state-initiated proceedings" requirement, Intervenors' arguments would have a federal court surrender its jurisdiction whenever it is asked to adjudicate issues pending in a first-filed state action. Intervenors' support for this incorrect argument is dicta from *Gilbertson* and *Huffman v. Pursue, Ltd.*, 420 U.S. 592 (1975), but those cases merely recognize state courts as competent forums for resolving constitutional questions. Neither the state court's ability to resolve constitutional questions nor any convenience to a federal court in avoiding them has anything to do with the prerequisites which must exist to justify *Younger*. *See, e.g.*, *Wiener v. County of San Diego*, 23 F.3d 263 (9th Cir. 1994) ("there is no reason why the California state court should mind if a federal court resolves [plaintiff's] claim").

Simply put, "[t]here is no doctrine that the availability or even the pendency of state judicial proceedings excludes federal courts" from adjudicating the same issues. *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 373 (1989). Intervenors' state court action is owed no deference from a federal

court merely because that action also addresses the legality of an ordinance being challenged in federal court. *Younger*'s concern for comity between state and federal sovereigns is not served by deferring to lawsuits by private groups based outside of Solano County asserting their private interests in closing one of the State's major landfills.[4] *See* State Opp'n Br., SER 10-13. *Younger* abstention has never been upheld on these facts, and this Court should decline the invitation to do so now.

      2.     <u>The State Actions Are Not Enforcement Proceedings Against PHLF</u>

Intervenors' mischaracterize their private lawsuits against the County as enforcement actions against PHLF in order to equate them with "state-initiated proceedings" to which *Younger* applies. Clearly, the writ actions filed against Solano County are not enforcement proceedings against PHLF or any of the additional Plaintiffs. The state actions concern whether the County has a duty to enforce Measure E, and only the County's actions are at issue.

The initiative power to enact legislation does not confer on voters, let alone interest groups based outside Solano County, the authority to enforce their enactments. Not a single case cited by Intervenors supports their claim that initiative supporters can bring enforcement actions in their own right. Sierra Club

---

[4]     Not only are these private lawsuits not "state-initiated proceedings," but both the County and State have expressly opposed both enforcement of Measure E and abstention.

Br. at 21 (citing cases which allowed initiative *sponsors* to intervene in suits implicating initiatives).

Rather than a challenge to a "civil enforcement proceeding," Plaintiffs' federal suit challenging Measure E is "no different in substance from a facial challenge to an allegedly unconstitutional zoning ordinance – which [federal courts] would assuredly not require to be brought in state courts." *NOPSI*, 491 U.S. at 372-73. Simply, this is not the "type of proceeding to which *Younger* applies." *Id.* at 367-68.

### B. There Are No "Important State Interests" For Purposes Of *Younger*

#### 1. The "Important State Interest" Element Requires More Than The State's Generic Interest In The Subject Matter of State Litigation

Intervenors and the district court read the "important state interest" element in a vacuum and would find the element satisfied in many routine scenarios in which the state has a general interest in the subject matter of state litigation. This interpretation is out of context with the entire body of *Younger* case law which demonstrates that the meaning of "important" for purposes of *Younger* is not simply the state's generic interest in the subject matter of the litigation, but "the *State's* interest in *pursuing* an ongoing state proceeding." *Ohio Bureau of Empl. Servs. v. Hodory*, 431 U.S. 471, 477 (1977) (emphasis added). The requirement is satisfied only where "the state action concerns the central sovereign function of

state government." *Philip Morris, Inc. v. Blumenthal*, 123 F.3d 103, 105-06 (2d Cir. 1997); *see also Goldie's Bookstore, Inc. v. Superior Court of Cal.*, 739 F.2d 466 (9th Cir. 1984) (private unlawful detainer action does not implicate state interests).

Intervenors make no serious attempt to refute the argument that in each of the cases applying *Younger*, the important state interest element was satisfied only because the state (or one of its political subdivisions) was acting in its sovereign capacity to enforce or apply its law against the state plaintiff.[5]  *See* Opening Br. at 19-24.  Intervenors point to no case, other than two words of unexplained dicta from *AmerisourceBergen*, in which an important state interest was found in the absence of a sovereign acting to enforce its laws.  The case of *Woodfeathers, Inc. v. Washington County*, 180 F.3d 1017 (9th Cir. 1999) continues to undermine, not support, the district court's ruling because the *Woodfeathers* court repeatedly based its "important state interest" finding on the fact that the "[c]ivil actions [were] brought by a government entity." *Id.* at 1021.  The *Younger* doctrine's expansion from the criminal context to the civil context is not without limits – federal courts must recognize the purpose of *Younger* and confine the "important state interest"

---

[5]    Intervenors' rhetorical declaration that "voters are the ultimate sovereign" is merely another version of their attempt to mischaracterize their state actions as sovereign enforcement proceedings.  Intervenors have no sovereign authority and do not represent Solano County voters.  *See* Opening Br. at 2, n.1 (stating Intervenors' purely private interests).

element to situations where the federal suit may intrude upon the state sovereign's exercise of sovereign authority. The district court's imprecise interpretation of the second element overlooks the purpose of *Younger* and must be corrected.

2. The County And State Governments' Requests For Federal Adjudication Eliminates *Younger*'s Policy Concerns

The County and State briefs advocating for federal review of Measure E illustrate the lack of comity concerns and "important state interests" within the meaning of *Younger*. *Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc.*, 477 U.S. 619, 626 (1986) ("principles of comity" are not implicated where "the State voluntarily chooses to submit to a federal forum"). The cases cited by Sierra Club are not to the contrary. The city in *San Remo* certainly did not oppose *Younger* abstention, which was applied in that case only to bar a new claim against the city. *San Remo*, 145 F.3d at 1103-05. Likewise, in stark contrast to this case, the record in *Columbia Basin Apt. Ass'n v. City of Pasco*, 268 F.3d 791 (9th Cir. 2001) "[did] not reflect that the City expressly urged the district court to adjudicate" the dispute. *Id.* at 800.

Here, there is no important state interest within the meaning of *Younger*. Neither the State nor the County has any sovereign interest in enforcing Measure E. Instead, the state litigation represents attempts by private interest groups seeking to lay the groundwork for the closure of one of California's important landfills by compelling Solano County to enforce a ballot initiative the

County believes is unconstitutional. These private interests neither give rise to concerns of comity nor justify the federal court's deference.

### C. Federal Review Of Measure E Would Not Enjoin State-Initiated Proceedings For Purposes Of Younger

Under this Circuit's *Younger* jurisprudence, district courts may not abstain unless the federal court action would enjoin a "state-initiated proceeding." *AmerisourceBergen*, 495 F.3d at 1149 (citing *Gilbertson*, 381 F.3d at 978 (en banc)). This "vital and indispensable" fourth element ensures that *Younger* is not over-applied to cases where "the policies behind [*Younger*] [are not] implicated by the actions requested of the federal court." *Id.* Here, Plaintiffs' federal challenge to Measure E could not have enjoined a state-initiated proceeding because no such enforcement proceeding against Plaintiffs existed.

As discussed above, the state actions only place at issue whether the County has a duty to enforce Measure E. They are not enforcement actions against any Plaintiff, many of whom were forced to intervene in the state actions to protect their interests. In the absence of a direct enforcement action against Plaintiffs by the County, "*Younger* abstention does not apply when, as here, a federal plaintiff seeks a prospective injunction against prosecutions under an allegedly unconstitutional ordinance." *Wiener*, 23 F.3d at 267.

At most, this case involves parallel litigation of issues in state and federal court. Plaintiffs' federal suit did not seek to halt the state litigation nor did it seek

an order enjoining the state court from granting the writ petitions. The only

possible interference to the state litigation from Plaintiffs' requested relief was the

potential for the federal and state court to reach different conclusions regarding

Measure E's constitutionality.[6]  Yet this "potential conflict with ongoing state

proceedings" does not justify abstention.  *AmerisourceBergen*, 495 F.3d at 1151;

*NOPSI*, 491 U.S. at 373.  On these facts, there is simply no "*Younger*-based *reason*

to abstain."  *AmerisourceBergen*, 495 F.3d at 1149.

### D.  Abstention Denied Nonparties Their Day In Court

The district court's abstention was also error because it denied the twenty-

three (now thirteen) Plaintiffs their opportunity to challenge Measure E in federal

court.  Sierra Club's disparaging remarks to the contrary, the fact that Plaintiffs

who were not already party to the state litigation intervened in the state cases after

their federal claim was dismissed was neither concealed from this Court nor

consequential.  Binding precedent insists that abstention not be applied where the

federal action involves non-parties to the state action even if the non-parties "could

have intervened in the state court case."  *Green v. City of Tucson*, 255 F.3d 1086,

1099 (9th Cir. 2001) (*overruled in part on other grounds*); *Doran v. Salem Inn*,

---

[6]  The Supreme Court's decision in *Samuels v. Mackell*, 401 U.S. 66, 72 (1971) stands only for the unremarkable point that a litigant in federal court seeking to enjoin state criminal proceedings against him cannot avoid abstention merely by requesting declaratory relief rather than injunctive relief.  Here, Plaintiffs are not seeking declaratory relief to enjoin any state enforcement proceedings.

422 U.S. 922 (1975). It is equally clear that the federal Plaintiffs were "improperly relegated to an exclusive state court remedy for claimed violations of their federal constitutional rights."[7] *Green*, 255 F.3d at 1089. This error is independent grounds for reversal.

## II. PLAINTIFFS' LAWSUIT PRESENTS A CASE OR CONTROVERSY AND PLAINTIFFS HAVE STANDING TO SUE

Intervenors raise again in this Court a menu of justiciability arguments the district court specifically declined to reach. AR 18-19. In essence, Intervenors contend Measure E posed no threat to the Plaintiffs. The pleadings, borne out by subsequent history, amply demonstrate that once Intervenors' petitions were filed, Measure E threatened the long-term viability of PHLF and presented an immediate impediment to the management of its business and the businesses of the out-of-county disposal companies that relied upon PHLF. No justiciability issues barred the district court from taking up Plaintiffs' complaint.

### A. Intervenors' State Court Actions To Compel Measure E Enforcement Provide Article III Standing.

Sierra Club's argument that there is no threat of enforcement of Measure E that would bestow standing is plainly contradicted by the state court actions

---

[7] The non-party Plaintiffs, waste service providers operating in their own jurisdictions in three different states, were "unrelated in terms of ownership, control, and management." *Doran*, 422 U.S. at 928-29. Their business activities and interests are clearly sufficiently diverse under the rationale of *Doran* and *Green* that they should not be equated with Waste Connections, Inc. and Potrero Hills Landfill, Inc., the only parties named in the state litigation. *See* Opening Br. at 28-31.

seeking a writ of mandamus that will have a disastrous impact on the Plaintiffs' businesses and livelihoods. This Court, like others, has held that such private party litigation threatening a plaintiff establishes standing. *See MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128-29 (2007) (private party's threat of enforcement for patent infringement against a licensee is an "actual controversy" giving rise to jurisdiction); *Sable Commc'n. of Cal., Inc. v. Pac. Tel. & Tel. Co.*, 890 F.2d 184, 187 (9th Cir. 1989) (threat of enforcement from private party enforcement of state rule sufficient for standing). Indeed, as Plaintiffs foresaw, the threat of enforcement has become even more imminent now that the state superior court granted the writs and Intervenors have each submitted proposed judgments compelling Solano County to impose Measure E's 95,000 ton limit on out-of-county waste. *See* Perlmutter Decl., Exs. 1 and 4.

### B. The Presence Of Three Intervenors And The County Make A Case or Controversy

This case brings before the Court a diverse coalition of Plaintiffs injured by Measure E, three Intervenors staunchly supporting Measure E, and the Defendant County charged with enforcing Measure E. Thus, adverseness is concrete, fully satisfying case and controversy requirements pursuant to *INS v. Chadha*, 462 U.S. 919 (1983).

Sierra Club's attempt to distinguish *Chadha* is unavailing. As in *Chadha*, where adverseness was "beyond doubt" when Congress intervened, the

intervention of SPRAWLDEF, NCRA, and Sierra Club supplies the Court with litigants willing to defend Measure E. *See also City of Burbank v. Burbank-Glendale-Pasadena Airport Auth.*, 113 Cal. App. 4th 465, 481 (Cal. Ct. App. 2003) (participation of an intervenor presented a sufficient case or controversy in a challenge to an initiative ordinance which the defendant-city agreed was unlawful).

As the entity charged with enforcing Measure E, Solano County is the only proper Defendant. As in *Chadha*, this Court's relief is required to enjoin the County from fulfilling its ministerial duty of enforcing Measure E, particularly now when the County faces Intervenors' efforts to compel enforcement of the initiative. Federal courts have long recognized that the executive branches of government are proper defendants when plaintiffs seek to challenge laws, even where the government does not actively enforce the challenged law. The "controversy exists not because the state official is himself a source of injury, but because the official represents the state whose statute is being challenged as a source of the injury." *Wilson v. Stocker*, 819 F.2d 943, 947 (10th Cir. 1987); *see also Diamond v. Charles*, 476 U.S. 64 (1986) ("the conflict between State officials empowered to enforce a law and private parties subject to prosecution under that law is a classic 'case' or 'controversy' within the meaning of U.S. Const. art. III.").

## III. PLAINTIFFS HAVE PRUDENTIAL STANDING TO RAISE THE UNCONSTITUTIONALITY OF MEASURE E

Plaintiffs have prudential standing if their interests in the suit are "arguably within the zone of interests to be protected or regulated by the statute or constitutional guaranty in question." *Clarke v. Sec. Indus. Ass'n*, 479 U.S. 388, 396 (1987). The test "is not meant to be especially demanding," *Clarke*, 479 U.S. at 399, and only one of the thirteen Plaintiffs needs to demonstrate prudential standing for the Court to assume jurisdiction. *See Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 263-64, n.9 (1977).

The coalition of Plaintiffs in this case include several out-of-state waste haulers who ship waste to PHLF, which resolves any possible dispute over prudential standing.[8] AR 25, 28. Plaintiffs' Amended Complaint specifically pled both the direct and indirect burdens Measure E would impose on interstate commerce. AR 25, 28, 34, 35, 37. These interests are within the zone of interests protected by the dormant Commerce Clause. Enforcement of Measure E will upset supply and demand for landfill disposal, impairing regional and statewide competition within the highly interstate industry in which Plaintiffs operate. AR 25, 31-32. As the direct beneficiaries of a proposed antitrust consent decree for the

---

[8] Sierra Club's attempt to cast doubt on the interstate nature of PHLF's operations is contrary to fact. Sierra Club Br. at 40. The documents generated in the CEQA review for the PHLF expansion do not purport to track out-of-state waste and do not reflect PHLF's 2009 operations. Sierra Club is fully aware of the 2009 waste data, as this issue was extensively discussed in affidavits by various Plaintiffs who subsequently intervened in the state court litigation.

divestiture of PHLF, waste hauling Plaintiffs are well within the zone of interests to challenge a local law obstructing interstate commerce. AR 24, 33-34. Furthermore, enforcement of Measure E will directly obstruct movement of articles in commerce across state and county lines by restricting out-of-county and out-of-state Plaintiffs' access to PHLF.

Sierra Club urges this Court to make an erroneous analogy to *City of Los Angeles v. County of Kern*, 581 F.3d 841 (9th Cir. 2009) ("*Kern*"), but *Kern* is wholly distinguishable from the present case. The plaintiffs in *Kern* alleged that a facially neutral ordinance banning land application of biosolids in Kern County violated the dormant Commerce Clause because the purpose and effect of the ordinance was to exclude out-of-county biosolids. The district court agreed, but on appeal this Court held that the district court should not have reached the merits, and found that plaintiffs lacked prudential standing to sue under the dormant Commerce Clause. *Id.* at 849. No plaintiff claimed to apply out-of-state biosolids to land in Kern County, and therefore the court found that the plaintiffs' interests did not have the "requisite link" to interstate commerce. *Id.* at 848.

Unlike the claim in *Kern*, Plaintiffs here assert that Measure E would directly restrict Plaintiffs' activities in interstate commerce. AR 24, 25, 28-29, 31-32. These factual allegations – such as PHLF's disposal contract with Nevada-based TrashPros and PHLF's acceptance of sold waste originating in Oregon – are

more than "formulaic recitations." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

Plaintiffs have done more than state a "plausible" claim for relief – they

specifically describe how Measure E burdens interstate commerce, is *per se*

discriminatory, and is unconstitutional on the merits. Solano Measure E's barrier

to waste at the county line is a classic form of local protectionism that offends the

dormant Commerce Clause, *see e.g., Fort Gratiot Sanitary Landfill v. Mich. Dep't*

*of Natural Res.*, 504 U.S. 353, 361 (1992), and Plaintiffs have prudential standing

to challenge it.

## IV.    PLAINTIFFS' CHALLENGE TO MEASURE E IS NOT TIME-BARRED

Plaintiffs, some of whom came into existence or began using PHLF only in

recent years, can bring timely facial claims against Measure E. Federal law

controls the accrual date of a section 1983 claim, and generally, the "cause of

action accrues, and a statute of limitations commences to run, when the wrongful

act or omission results in damages." *Wallace v. Kato*, 549 U.S. 384, 391 (2007).

There is no dispute that Measure E was enacted in 1984, but that date does

not mark the beginning of the limitations period for any Plaintiff that was not

interested in disposing of out-of-county waste in Solano County at that time.

Before the statute of limitations can begin to run, a prospective plaintiff must first

be injured. This fundamental principle is expressed even in the case on which

Sierra Club relies for its erroneous argument: "the statute of limitations begins to

run when a potential plaintiff knows or has reason to know of the asserted *injury*."
*Action Apartment Ass'n, Inc. v. Santa Monica Rent Control Opinion Bd*, 509 F.3d
1020, 1027 (9th Cir. 2007) (emphasis added). The takings cases on which Sierra
Club relies all assess the application of the passage of a statute on a landowner in
the jurisdiction at the time whose property value was immediately affected. *See*
Timothy Sandefur, *The Timing of Facial Challenges*, 43 Akron L. Rev. 51 (2010)
(explaining the distinction between facial takings claim and other facial challenges
to laws.) As the Amended Complaint makes clear, Waste Connections only
acquired PHLF in 2009 and suffered no injury from Measure E before that time.
Some Plaintiffs only began disposing of waste at PHLF in 2009. The statute of
limitations did not begin to run before these Plaintiffs were injured and their claims
against Measure E are not time-barred.

## V. PLAINTIFFS' INJURIES ARE RIPE FOR IMMEDIATE REVIEW
### A. Measure E Causes Plaintiffs To Suffer Present Harms

Sierra Club contends that Plaintiffs' claims are not ripe because the County
has not enforced Measure E. But harm arises even before enforcement occurs.
Sierra Club overlooks the present harm Plaintiffs suffer as a result of Sierra Club's
own efforts to compel the County to apply Measure E to eviscerate Plaintiffs'
waste disposal operations. As discussed in the standing section above, a serious
threat of imminent enforcement exists from three pending mandamus actions filed
by Intervenors against Solano County to enforce Measure E, which also resolves

the ripeness issue. *See LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1156 (9th Cir. 2000) ("our finding of a reasonable threat of prosecution, for standing purposes, dispenses with any ripeness problem").

Unlike the cases cited by Sierra Club – *Lopez v. Candaele*, 2010 U.S. App. LEXIS 19459, No. 09-56238 (9th Cir. 2010), *Wolfson v. Brammer*, 616 F.3d 1045, 1063 (9th Cir. 2010) and *Pacific Legal Found. v. State Energy Res. Cons. & Dry Comm'n,* 659 F.2d 903, 916 (9th Cir. 1981) – there is no question here that Measure E applies to and would affect Plaintiffs' business operations. This dispute does not pivot on any contingencies that may or may not occur if enforcement is ordered; Measure E will reduce the waste flow by over 75% to a major landfill that all Plaintiffs rely on. The threat of enforcement caused by the Intervenors' state litigation impairs the waste-hauling Plaintiffs' abilities to engage in advance planning and long-term contracting crucial to participation in the waste disposal industry by limiting Plaintiffs' ability to compete for municipal franchise contracts. Similarly, Plaintiff PHLF is presently injured because the doubt cast by three state lawsuits to compel enforcement of Measure E impairs PHLF's ability to bid on long-term disposal contracts for extraterritorial wastes. AR 31-32. If immediate review is denied, Plaintiffs will suffer ongoing hardship from this uncertainty.

**B.    The Issues Presented Are Fit For Judicial Review**

Sierra Club also argues that Plaintiffs' claims are not fit for judicial review because the application of Measure E is speculative, but as discussed above, the threat of enforcement is real and concrete.  Moreover, Plaintiffs' claim presents a purely legal question – whether Measure E violates the dormant Commerce Clause.  Unlike *Exxon Corp v. Heinz*, 32 F.3d 1399, 1404 (9th Cir. 1999), no further factual development is needed.  This Court need only look to the text of Measure E, which requires the County to prohibit the importation of all out-of-county (necessarily including all out-of-state) waste beyond 95,000 tons per year, to determine its constitutionality.

**C.    Plaintiffs Will Suffer Hardship If This Court Denies Review**

Plaintiffs' claims are also ripe because they will suffer hardship if review is denied.  *See Abbott Lab. v. Gardner*, 387 U.S. 136, 148-149, 154 (1967) (regulation requiring the relabeling of products by drug manufacturers created a pre-enforcement injury-in-fact where the regulation would require "significant changes in [plaintiffs'] everyday business practices").  Measure E's impact on Plaintiffs' business practices is "sufficiently direct and immediate as to render the issue appropriate for judicial review."  *Id.* at 152; *see also Pacific Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190 (1983) (pre-enforcement challenge to waste disposal regulations permitted where regulations interfered with long-term planning of electric utilities).

The waste disposal industry relies on a complex infrastructure dependent on long-term contracting, volume forecasting, and advance planning for trucking, transfer stations, fuel and personnel. Measure E casts doubt over the long-term availability of PHLF as a viable disposal facility on which out-of-county and out-of-state Plaintiffs can rely. Measure E would reduce PHLF's current annual out-of-county tonnage from 600,000 tons to at most 95,000 tons and substantially reduce the revenues generated by this waste. AR 32, 34. Without pre-enforcement review, PHLF must choose between entering disposal contracts for extraterritorial waste subject to future impairment if Measure E is enforced or foregoing extraterritorial contracts altogether. AR 34-35.

Under these standards, Plaintiffs' claim is constitutionally ripe because the Amended Complaint pleads actual present harms as well as significant possibility of future harms. S*ee Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979) (The possibility of future harm warrants review where plaintiffs face "a realistic danger of sustaining a direct injury as a result of [a] statute's [threatened] operation or enforcement.").

## VI. ABSTENTION CAN NOT BE JUSTIFIED UNDER *PULLMAN*

In abstaining under *Younger*, the district court dismissed the case and expressly refused to consider abstention under the *Pullman* doctrine. AR 18-19;

*Railroad Comm'n of Texas v. Pullman Co.*, 312 U.S. 496 (1941) ("*Pullman*").

*Pullman* is not a basis for abstention here and should not be invoked on appeal.

Like all abstention doctrines, *Pullman* "is an extraordinary and narrow exception to the duty of a district court to adjudicate a controversy" properly before it. *Canton v. Spokane Sch. Dist. No. 81*, 498 F.2d 840, 845 (9th Cir. 1974). To "give due respect to a suitor's choice of a federal forum for the hearing and decision of his federal constitutional claims," *Pullman* abstention should rarely be applied. *Zwickler v. Koota*, 389 U.S. 241, 248 (1967).

In *Pullman*, railroads and their porters brought an equal protection challenge to a Texas Railroad Commission regulation which required that all sleeper cars on Texas trains be attended by Pullman conductors rather than porters during an era when conductors where white and porters were black. According to the Supreme Court, the pre-civil-rights era race relations controversy touched on "a sensitive area of social policy upon which the federal courts ought not to enter unless no alternative to its adjudication is open." 312 U.S. at 498. Such an alternative was available in that the Railroad Commission's statutory authority for issuing the controversial regulation was doubtful under state law. In light of this state law vulnerability, the Court instructed the district court to "restrain [its] authority" pending a determination of the state issue in state court. *Id.* at 501. If the

Commission lacked authority to promulgate the regulation, there would be no need to decide its constitutionality.

From the Supreme Court's decision, this Circuit has derived three criteria that must be satisfied before *Pullman* abstention is allowed: "(1) the case touches on a sensitive area of social policy upon which federal courts ought not to enter unless no alternative to its adjudication is open, (2) constitutional adjudication plainly can be avoided if a definite ruling on the state issue would terminate the controversy, and (3) [the proper resolution of] the possible determinative issue of state law is uncertain." *Confederated Salish v Simonich*, 29 F.3d 1398, 1407 (9th Cir. 1994). None of these criteria are satisfied here.

### A. Measure E's Legality Under The Federal Commerce Clause Does Not Touch On A Sensitive Area Of Social Policy Upon Which Federal Courts Ought Not To Enter

The Commerce Clause of the U.S. Constitution provides that "[t]he Congress shall have Power . . . [t]o regulate Commerce . . . among the several States . . . ." U.S. Const. art. I, § 8, cl. 3. The corollary "dormant" Commerce Clause prohibits states from promulgating discriminatory or burdensome regulations that interfere with the federal government's exclusive authority over interstate commerce. *Hughes v. Oklahoma*, 441 U.S. 322, 326 (1979). State or local regulations of interstate commerce are prohibited unless their effects are incidental or expressly authorized by the federal Congress. *Dean Milk Co. v. Madison*, 340 U.S. 349, 353 (1951). By its very nature, the Commerce Clause

safeguards federal interests over state interests, protecting all states by ensuring no state or local government erects unfounded barriers to trade and economic activity.

Plaintiffs' Amended Complaint raises a single issue: the conflict between Measure E and the federal Commerce Clause. Accordingly, the complaint did not involve "a sensitive area of social policy that is best left to the states to address." *Fireman's Fund Ins. Co. v. City of Lodi*, 302 F.3d 928, 940 (9th Cir. 2002) (finding the first *Pullman* factor lacking because, though it implicated an area of local concern, the legality of a municipal hazardous waste ordinance "need not be resolved by states in isolation"). Rather, because interstate commerce is the dominant province of the federal government, the issue of whether a state or local regulation violates the dormant Commerce Clause is quintessentially an issue best left to the *federal* courts. *See Harper v. PSC*, 396 F.3d 348, 356 (4th Cir. 2005) (Commerce Clause challenge to a discriminatory waste ordinance presented "overwhelming federal interest[s]" making it inappropriate for abstention).

Indeed, the issue at stake in this case is not a local government's authority to ensure the safe disposal of solid waste; it is rather the authority to wall-off an entire county from the solid waste market. It cannot reasonably be argued that the erection of barriers to trade in solid waste is an area of "sensitive social policy upon which federal courts ought not to enter." *See e.g.*, *City of Philadelphia v. New Jersey*, 437 U.S. 617 (1978); *Harper*, 396 F.3d at 356 ("[n]o state's dignity

could be offended by acknowledging the obvious point that the Framers consciously withdrew interstate commerce from the vast collection of interests that remain the primary responsibility of the states."). *Pullman* abstention fails with the first element and the Court need look no further.

### B. Constitutional Adjudication Cannot Be Avoided By Resolving An Uncertain Issue Of State Law

*Pullman* is also inapplicable because Measure E's unconstitutionality cannot be avoided on independent state grounds. Rather, "the naked question, uncomplicated by an unresolved state law, is whether [Measure E] on its face is unconstitutional." *Wisconsin v. Constantineua*, 400 U.S. 433, 439 (1971). Inervenors' argument that the state court could moot the constitutional question by interpreting Measure E to apply only to intrastate waste lacks merit for two reasons: (1) Measure E clearly applies on its face to waste that originates *anywhere* outside of Solano County, and (2) construing Measure E to apply only to waste originating in other California counties does not cure the Commerce Clause violation.

*Pullman* abstention "is not to be ordered unless the state statute is of an uncertain nature and is obviously susceptible of a limiting construction." *Zwickler*, 389 U.S. at 252 n.14 (citing cases). Where "there is no ambiguity in the state statute, the federal court should . . . proceed to decide the federal constitutional claim." *Constantineua*, 400 U.S. at 438. Measure E's *per se* unconstitutionality is

not subject to question.  Its operative text unambiguously imposes a barrier on "*any* solid waste . . . which originated or was collected *outside the territorial limits of Solano County*," necessarily including waste generated in other states.  AR 41. Elementary principles of statutory construction and California law provide that "[i]n the construction of a statute . . . the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted . . . ."  Cal. Code Civ. Proc. § 1858.  *See also Cal. Fed. Savings & Loan Ass'n v. City of Los Angeles*, 11 Cal. 4th. 342, 349 (1995) (the Court is "to construe, not to amend, the statute . . . We may not, under the guise of construction, rewrite the law or give the words an effect different from the plain and direct import of the terms used.").  Binding precedent prohibits *Pullman* abstention in this scenario where the challenged statute is unambiguous and "not fairly subject" to a "limiting construction."[9] *Constantineau*, 400 U.S. at 438.

In any event, re-writing Measure E to apply only to waste originating in California does not resolve the constitutional defect.  Waste import restrictions enacted to wall-off a county from the rest of the state are *per se* unconstitutional under well-settled Commerce Clause jurisprudence.  *See, e.g., Fort Gratiot*, 504

---

[9]     The state superior court expressly rewrote Measure E to eliminate its application to out of state waste, but the legitimacy of this action has yet to be tested.

U.S. at 361 ("a "State (or one of its political subdivisions) may not avoid the strictures of the Commerce Clause by curtailing the movement of articles of commerce through subdivisions of the State, rather than through the State itself."). Moreover, Measure E implicates and indeed violates the dormant Commerce Clause not only by its *per se* discrimination on the basis of origin, but also because its application – intrastate or otherwise – would substantially affect interstate commerce. *Pike v. Bruce Church*, 397 U.S. 137, 142 (1970) (statutes are invalid under the dormant Commerce Clause when "the burden on interstate commerce is clearly excessive in relation to the putative local benefits."); AR 35-37. A constitutional determination remains necessary regardless of whether Measure E is applied to all waste or limited to waste originating in other California counties. Indeed, as illustrated by this case, *Pullman* is rarely proper in the context of a facial challenge to a state statute because "a constitutional determination is generally required to assess a frontal attack upon a statute." *Porter v. Jones*, 319 F.3d 483, 493 (9th Cir. 2003).

### C. Ordering *Pullman* Abstention On Appeal Would Produce Inequitable Results

*Pullman* abstention does not implicate subject matter jurisdiction and "federal courts are *never required* to apply the doctrine." *Columbia Basin Apt. Ass'n v. City of Pasco*, 268 F.3d at 802 (emphasis added). The doctrine "is not an automatic rule applied whenever a federal court is faced with a doubtful issue of

state law; it rather involves a discretionary exercise of a court's equity powers."

*Baggett v. Bullitt*, 377 U.S. 360, 375 (1964). When *Pullman* abstention is invoked,

the district court stays the federal case, requiring the plaintiff to seek a definitive

ruling in state court on the state law question. *San Remo*, 145 F.3d at 1104. The

district court's retention of jurisdiction allows the plaintiff to return to federal court

for resolution of the federal issue if the plaintiff makes a so-called "England

reservation," reserving the federal issue from litigation in state court. *England v.*

*Louisiana. State Bd. of Med. Exam'rs*, 375 U.S. 411 (1964). This procedure

preserves "the role of state courts as the final expositors of state law," as well as

the interests of putative federal litigants who have the "right . . . to choose a

Federal court" and "the primacy of the federal judiciary in deciding questions of

federal law." *Id.* at 415-16.

After the district court erroneously dismissed Plaintiffs' Amended

Complaint under the *Younger* doctrine, Plaintiffs had no choice but to raise their

federal challenges to Measure E in the state court proceedings. Reversing the

district court's erroneous *Younger*-based dismissal but ordering the court to stay

federal jurisdiction under *Pullman* would be inequitable under the current

procedural posture of this case because Plaintiffs may have already lost their right

to reserve their federal claim for federal adjudication.[10]  The result would violate *England*'s holding that a litigant should not be "compelled, without his consent and through no fault of his own, to accept . . . a state court's determination of [his federal] claims."  *Id.* at 415.

The facts of this case do not justify *Pullman* abstention.  Moreover, as an equitable doctrine, *Pullman* should not be applied here to compound the effect of the district court's error and set an additional "procedural trap[] operating to deprive Plaintiffs of their right to a District Court determination of their federal claims."  *Id.* at 418.  Doing so would be inequitable, contrary to the right of litigants to elect federal adjudication of federal claims, and inconsistent with the narrow limits on abstention in general.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that the district court's judgment be reversed and remanded to afford thirteen Plaintiffs -- as well as Solano County -- their right to challenge an illegal and discriminatory ballot initiative in federal court.

---

[10]      Were this Court to find *Pullman* abstention applicable, it would still be required to reverse the dismissal and remand with instructions to stay the federal case pending resolution of any state claims by the state court.  *San Remo*, 145 F.3d at 1105, n.6 ("Under our precedents, a holding that the district court should have abstained under *Pullman* is deemed a reversal of dismissal.").

Dated:  November 17, 2010          Respectfully Submitted,


                                      /s/  Lily N. Chinn
                             Gary J. Smith
                             Lily N. Chinn
                             Beveridge & Diamond, P.C.
                             456 Montgomery Street, Suite 1800
                             San Francisco, CA 94104-1251
                             Phone:  (415) 262-4000
                             Fax:    (415) 262-4040
                             Email:  gsmith@bdlaw.com
                             Email :  lchinn@bdlaw.com

                             James B. Slaughter
                             Graham St. Michel
                             Beveridge & Diamond, P.C.
                             1350 I Street, NW, Suite 700
                             Washington, DC 20005-3311
                             Phone:  (202) 789-6000
                             Fax:    (202) 789-6190
                             Email:  jslaughter@bdlaw.com
                             Email:  gstmichel@bdlaw.com

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that pursuant to Federal Rule of Appellate Procedure 32(a)(7)(C) and Circuit Rule 32-1, the attached Brief for Appellants has been prepared using 14-point, proportionally spaced, Times New Roman typeface, and it contains 6,952 words.

Dated: November 17, 2010　　　　　　　Respectfully Submitted,

　　　　　　　　　　　　　　　　/s/　Lily N. Chinn
　　　　　　　　　　　　　　　　Lily N. Chinn
　　　　　　　　　　　　　　　　Beveridge & Diamond, P.C.
　　　　　　　　　　　　　　　　456 Montgomery Street, Suite 1800
　　　　　　　　　　　　　　　　San Francisco, CA 94104-1251
　　　　　　　　　　　　　　　　Phone:　(415) 262-4000
　　　　　　　　　　　　　　　　Fax:　　(415) 262-4040
　　　　　　　　　　　　　　　　Email :　lchinn@bdlaw.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on November 17, 2010.

I certify that counsel for Solano County, Sierra Club, Northern California Recycling Association, Sustainability, Parks, Recycling, and Wildlife Legal Defense Fund are registered CM/ECF users and that service will be accomplished to them by the appellate CM/ECF system. Counsel for the California Department of Justice have been served via U.S. Mail.

| | |
|---|---|
| James W. Laughlin, County Counsel<br>Azniv Darbinian, County Counsel<br>COUNTY OF SOLANO<br>675 Texas Street, Suite 6600<br>Fairfield, CA 94533-6342<br>T: 707.784.6140<br>F: 707.784.6862<br>Email: jwlaughlin@solanocounty.com<br>        adarbinian@solanocounty.com<br><br>*Attorneys for Defendant County of Solano* | John Moore<br>HENN, ETZEL & MOORE INC<br>1970 Broadway Ste 950<br>Oakland, CA  94612<br>T: (510) 893-6300<br>F: (510) 433-1298<br>Email: jmoore@hennetzel.com<br><br>*Attorney for Intervenor Northern California Recycling Association* |
| Kelly T. Smith<br>THE SMITH FIRM<br>1541 Corporate Way, Suite 100<br>Sacramento, CA 95831<br>T: 916.442.2019<br>F: 916.442.0220<br>Email: ktsmith@thesmithfirm.com<br><br>*Attorney for Intervenor Sustainability, Parks, Recycling, and Wildlife Legal Defense Fund* | Nicole Gordon<br>Kathleen Foote<br>CALIFORNIA DEPARTMENT OF JUSTICE<br>455 Golden Gate Avenue, Suite 11000<br>San Francisco, CA 94102<br>T: 415.703.1276<br>F: 415.703.5480<br>Email: nicole.gordon@doj.ca.gov<br>        kathleen.foote@doj.ca.gov<br><br>*Attorney for Amicus Curiae State of California* |
| Robert S. "Perl" Perlmutter<br>SHUTE, MIHALY & WEINBERGER LLP<br>396 Hayes Street<br>San Francisco, CA 94102<br>T: 415.552.7272<br>F: 415.552.5816<br>Email: perlmutter@smwlaw.com<br><br>*Attorney for Intervenor Sierra Club* | |

By:        /s/ Lily N. Chinn